James H. LESAR, Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants.

Civ. A. No. 77–0692.

United States District Court, District of Columbia.

July 28, 1978.

James H. Lesar, pro se.

Lynne K. Zusman, Daniel J. Metcalfe, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This case comes before the Court on cross-motions for summary judgment and concerns the efforts of the pro se plaintiff, an attorney,[1] to gain access under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), to papers and investigative reports in the custody or control of the Department of Justice relating primarily to the assassination of Martin Luther King, Jr. The issues have been fully briefed and argued.

The vast bulk of the material requested has been supplied in whole or in part. The controversy here concerns documents or portions of documents withheld under various exemptions. Detailed affidavits and indices have been filed by the Department,

and in all instances the nature of the document and exemptions claimed are clearly described. It is not necessary to discuss each document in dispute. The papers fall under certain general categories and will be dealt with accordingly.

(1) *Security investigation.* For a period of many months prior to his death, the FBI placed Dr. King and certain of his immediate colleagues under constant surveillance. Records of microphonic surveillance have been inventoried and are sealed at Archives by Order of The Honorable John Lewis Smith, Jr. dated January 31, 1977, in consolidated Civil Actions Nos. 76–1185 and 1186. These materials remain subject to release by order from a court of competent jurisdiction requiring disclosure. Defendant originally relied solely on Judge Smith's Order as ground for refusing disclosure of any of the papers covered by the Order. At oral argument the Court indicated that the FOIA may still apply to these materials. Thereafter the papers were individually reviewed by appropriate Justice Department personnel and processed under FOIA. The results of this examination are detailed in affidavit form.

Plaintiff stated at oral argument that he had no interest in these papers insofar as they reveal intimate private conversations or sexual activity. He presses, however, for any materials relating to political matters. These materials fall into two categories:

 (1) Papers containing mostly political, nonpersonal conversations have now been identified and will be released upon order of this Court. The Court directs that these papers be released.

 (2) Other material has been released but mostly in expurgated form. Each deletion is keyed to one of the following FOIA exemptions: b(1), b(2), b(7)(C), (D), and (E). When the expurgated documents are reviewed in context it appears that defendants have proceeded in good faith and deleted only material within the exemptions claimed. Plaintiff suggests

---

1. Mr. Lesar is associated with Mr. Harold Weisberg, an authority on the King assassina-

tion. Mr. Lesar has been counsel in various proceedings for James Earl Ray.

that material impinging on privacy interests should be disclosed and denied the protection of b(7)(C) because the surveillance conducted by the FBI was illegal and therefore not law enforcement. Illegality or legality does not determine the applicability of this exemption. No further disclosures from the materials sequestered under Judge Smith's Order is required except as indicated above.

(2) *Records obtained from Memphis and Atlanta Police.* Exemption for these records is claimed under b(7)(D) with the assertion that the exemption applies to cooperating law enforcement agencies as "confidential sources." Both police departments submitted the records to the Department of Justice in confidence. The Memphis records which are of special interest to plaintiff are shown to have been disclosed to the FBI under strict assurances of confidentiality and with dubious subpoena protection. It may well be that these police records are not in fact agency records. *Compare Goland v. CIA*, No. 76-1800, slip op. at 7-14 (D.C.Cir., May 23, 1978) *with Forsham v. Califano*, No. 76-1308, slip op. at 16 n. 19, 18 (D.C.Cir., July 11, 1978).

■ Assuming without deciding that the police records have become agency records the Court concluded that the exemption claimed could best be determined after an *in camera* inspection which would fully disclose the nature of the materials involved and enable the Court to balance the public interest against those strong considerations of policy underlying the exemptions claimed. The documents proved self-explanatory and no supplemental *in camera* proceedings on a sealed record were necessary.

The Atlanta records detail various threats on the life of Dr. King by named individuals and tips or other information from Dr. King's entourage concerning threats or suspicious activity.

The Memphis records are far more voluminous since they cover the immediate investigation of the killing and subsequent investigation of leads and suspects. These materials disclose police investigative techniques in detail. Numerous persons were interviewed and always their name, address and other personal data are reported. The materials include informal reports of tips or inquiries as well as formal Q & A interrogations of certain persons. Documentation is complete covering detailed surveys of the scene, the body, the presumed site from which the shot was fired, contemporaneous cruiser dispatches, and reports summarizing activities. The investigation appears to have been thorough and conscientious.

■ In support of the exemption it is strenuously contended that FBI cooperation with state and local law enforcing agencies will be seriously harmed if material from cooperating local police agencies is not treated as "confidential source" data. A b(7)(D) claim of exemption has frequently been sustained under comparable circumstances. *See Nix v. United States*, 572 F.2d 998 (4th Cir. 1978); *Church of Scientology v. United States Dept. of Justice*, 410 F.Supp. 1297 (C.D.Cal.1976), and various unreported decisions cited by the Government. The exemption will be sustained here. The Court finds no substantial countervailing public interest in disclosure and notes that the bulk, if not all, of the material is of a nature that would bring it under other FOIA exemptions if processed sheet-by-sheet.

■ Plaintiff desires to use discovery techniques in an attempt to substantiate his belief that the Memphis Police may have disclosed some or all of their records to others. Whatever the facts in this regard, the inquiry would be fruitless. The Court holds the public interest requires that the FBI's cooperative arrangements with local police not be breached under FOIA compulsion where the cooperating agencies have objected and by affidavits continue to insist upon confidentiality.

■ (3) *Classified data.* Certain materials as fully described in the meticulous affidavit of Lewis L. Small have been withheld as exempt pursuant to (b)(1) after being classified in strict compliance with Execu-

tive Order 11652, 3 C.F.R. 678 (1972). Reclassification was done by authorized personnel coincident with the request, and certain materials were declassified and disclosed. Where classification was still deemed necessary, it was imposed to protect the identity of confidential intelligence sources, including sources in contact with foreign establishments within and without the United States, and sources who have penetrated domestic organizations controlled by foreign powers that are targets of national security investigation. Protection was also afforded material that would reveal cooperation with foreign police agencies. Plaintiff points to instances in the past in which exemption claims made in other litigation in which he was involved proved unfounded in the light of other disclosures. However that may be, that contention is unpersuasive. The Court is satisfied that the exemption claimed here should be sustained. *See Weissman v. CIA*, 184 U.S.App.D.C. 117, 121–23, 565 F.2d 692, 696–98 (1977).

█ Plaintiff argues that proper procedures were not followed in that certain documents in the form of notes taken from classified documents in preparation of a Task Force study were not immediately classified and lay dormant, unclassified, until his FOIA request. This atypical slip-up does not undermine the claimed exemption. The working notes receive derivative protection. Plaintiff also notes the originally classified documents now released were not so stamped but it is clear that they were originally so stamped and that the stamp was removed coincident with removal from classification. *See* Exec. Order No. 11652 § 4(A), 6(B), 3 C.F.R. 678, 682, 686 (1972).

█ (4) *Informant symbol numbers.* The exemption under (b)(2) claimed for deletion of these symbol numbers from documents otherwise supplied is sustained. There is no legitimate public interest in releasing these symbols and such release would aid identification of informers and significantly harm governmental interests. *See Department of the Air Force v. Rose*, ·425 U.S. 352, 364, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

█ (5) *Privacy materials.* Exemption under b(7)(C) is claimed to protect certain aspects of the privacy of Dr. King's family and the identity of persons connected with the FBI investigation where privacy interests are involved. Primarily these include the names of persons supplying information and FBI personnel below the rank of section chief. There is no reason to question the bona fides of these deletions. Plaintiff, who has been a student of the King and Kennedy assassinations, claims that because he believes he can identify many of the names deleted, these names are in the public domain. This is fallacious. The fact that an expert can piece together identifying data does not make the identifications in question automatically part of the public domain.

█ As to the non-name information deleted, there is no suggestion that its release would not infringe on the privacy of the persons involved. It is the Court's view that no amount of further discovery will determine whether or not or to what extent any of these individuals will be injured by the release of privacy data. To initiate such an inquiry would in the nature of things destroy the privilege, for the inquiry cannot be made without revealing the withheld information. It is difficult, if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort.

█ The public interest in disclosure must, of course, be weighed. The Court, however, accepts the view that because of the contemporary character of the data, protection of FBI personnel and their informants is warranted. Those cooperating with law enforcement should not now pay the price of full disclosure of personal detail.

The Court has not conducted any *in camera* review of the documents except as previously indicated. It has examined the excerpted documents as turned over to plaintiff, from which it appears that the exemp-

926

tions claimed apply. The Court in this instance is impressed with the detailed nature of the affidavits submitted by both sides, the competence of Government counsel, and the apparent care with which the matter has been dealt with administratively. Thus reliance is placed on the Government's representations.

Summary judgment is granted defendants in accordance with the foregoing rulings. Plaintiff's cross-motion is denied. The parties shall present an appropriate, detailed order within ten days.