The FOUNDING CHURCH OF SCIEN-
TOLOGY OF WASHINGTON, D. C.,
INC., Plaintiff,

v.

G. William MILLER et al., Defendants.

Civ. A. No. 75–1471.

United States District Court,
District of Columbia.

April 17, 1980.

On Motion for Reconsideration
May 13, 1980.

Robert A. Seefried, Seymour & Dudley, Washington, D. C., for plaintiff.

Thomas R. Kline, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

The Founding Church of Scientology of Washington, D. C. brought this action against the Department of the Treasury, its Secretary and Deputy Assistant Secretary for Enforcement and Operations, and the United States National Central Bureau ["NCB"] of the International Police Organization ["Interpol"] and its chief, seeking the disclosure of certain records under the Freedom of Information Act [hereinafter "Act"], 5 U.S.C. § 552.

After long and often unnecessary detours,[1] the case has culminated in a dispute over the defendants' assertion of three exemptions to some or all of thirty-seven documents.[2] On January 28, 1980 at the court's request the defendants submitted the documents in dispute *in camera* to aid the court in resolving the remaining contentions of both parties.[3]

The court premises its resolution of this dispute on both the basic structure of the Act and recent opinions by the United States Supreme Court regarding the purposes of the Act. The Act is drafted in an unmistakable fashion. All records held by agencies of the United States Government are covered by the Act unless they are specifically exempted by the nine subsections of § 552(b). Further, the burden is on the agency asserting the exemption to prove its applicability. § 552(a)(4)(B).

In a number of cases over the recent past the Supreme Court focused attention on the operation of this unusual Act. As Justice Thurgood Marshall noted in 1978, the Supreme Court has "repeatedly emphasized [that] 'the Act is broadly conceived,' *EPA v. Mink*, [410 U.S. 73, 80 [93 S.Ct. 827, 832, 35 L.Ed.2d 119] (1973)] and [that] its 'basic policy' is in favor of disclosure, *Department of Air Force v. Rose*, [425 U.S. 352, 361 [96 S.Ct. 1592, 1599, 98 L.Ed.2d 11] (1976)]." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978).

■ With this in mind the court will consider the three exemptions at issue. Defendants assert exemption § 552(b)(2) to withhold file and code numbers that appear on various documents. Defendants' Motion for Summary judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment at 10–13. Section (b)(2) exempts matters "related solely to the internal personnel rules and practices of an agency." The Supreme Court dealt with this exemption in a lengthy opinion in 1976. *Dept. of Air Force v. Rose, supra.* In *Rose* the Court held that while exemption (b)(2) is not applicable to "matters subject to . . . a genuine and significant public interest," the exemption does apply to "routine matters" of "merely internal significance" "in which the public could not reasonably be expected to have an interest." 425 U.S. at 369–70, 96

1. As an earlier court noted about a different government agency, the defendants have responded to plaintiff's requests for information with glacial celerity. For a discussion of these continental shifts, *see infra* at 149–150.

2. The parties also disagree about the thoroughness of defendants' search of Interpol headquarters in France. This will also be dealt with below, *see* 149–150, *infra*.

3. The *in camera* inspection is expressly authorized by the Act. 5 U.S.C. § 552(a)(4)(B) (1976). *See also Ray v. Turner*, 587 F.2d 1187, 1211 (D.C.Cir.1978) (concurrence of J. Skelly Wright, C. J.).

S.Ct. at 1603. The court is unable to ascertain any legitimate public interest in the file and code numbers at issue and will therefore sustain the defendants' assertion of exemption (b)(2) as to documents 2A, 3, 3A, 9, 10A, 13, 14, 15 and 19. *See, e. g., Nix v. United States,* 572 F.2d 998, 1005 (4th Cir. 1978); *Maroscia v. Levi,* 569 F.2d 1000, 1001–02 (7th Cir. 1977).

Next, the defendants assert exemption (b)(7)(C) to protect the names and the personal identifiers of persons referred to in certain documents. Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment at 13–15. Section (b)(7)(C) protects from disclosure portions of "investigatory records compiled for law enforcement purposes" that would "constitute an unwarranted invasion of personal privacy."

 In the present case the names and personal identifiers are, with a single exception,[4] of governmental officials. To apply § (b)(7)(C) the court must assess the interest in privacy and weigh it against any public interest in disclosure. *Department of the Air Force v. Rose,* 425 U.S. at 372–73, 96 S.Ct. at 1604–1605; *see also Retail Credit Co. v. FTC,* 1976–1 Trade Cases 68,124, 68,128 (D.D.C.1976) (Jones, C. J.), *citing Getman v. NLRB,* 450 F.2d 670, 674 (D.C. Cir.1971) (J. Skelly Wright, J.) Once again the court is unable to ascertain any public interest in the revelation of these names in this case. As the court in *Nix v. United States* noted, in a matter arousing greater public interest, nondisclosure of these officials' identity might be overborne by the legitimate interest of the public. 572 F.2d 998, 1006 (4th Cir. 1978), *citing Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136–37 (4th Cir. 1977). *But see, Ferguson v. Kelly,* 448 F.Supp. 919, 924 (N.D.Ill.1978). This ruling applies to both the names of public officials and the third party mentioned in one of the police documents. *Nix v. United States,* 572 F.2d at 1006; *Maroscia v. Levi,* 569 F.2d 1000 (7th Cir. 1977); *Lamont v. Department of Justice,* 475 F.Supp. 761, 777 (S.D.N.Y.1979) (Weinfeld, J.).

The last exemption involved, (b)(7)(D), has been asserted by defendants for all thirty-seven documents in question. Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment at 15–19. Section (b)(7)(D) protects "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records . . . disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source." The court will analyze the application of § (b)(7)(D) to this case in two parts, looking first at the question of disclosing the "identity of a confidential source" and, second, at the question of disclosing "confidential information furnished only by the confidential source."

 In order to qualify under § (b)(7)(D) to withhold the identity of a confidential source the defendants must show that the documents involved are "investigatory records compiled for law enforcement purposes." The records are in the possession of Interpol, which "serves mainly as a clearinghouse and relay center for information on crime and criminals for police forces in 130 member countries," Affidavit of James B. Clawson at 4, and has no law enforcement powers. Despite its lack of law enforcement authority, there can be no question that the records involved here were compiled by Interpol to relay to other police entities "for law enforcement purposes."

But to successfully assert § (b)(7)(D) defendants must also show that the documents do, in fact, contain "confidential sources." The defendants argue that the various police agencies who requested and received information from Interpol and relayed information to Interpol constitute "confidential sources." Putting aside the rather obvious question of how an agency letter soliciting information can constitute a

---

**4.** Document 19 contains the name of a third party under investigation by a police agency.

confidential source, this raises the issue of whether police agencies can be confidential sources for the purposes of § (b)(7)(D).

It is not clear from the face of the statute whether "confidential source" includes foreign, state and local law enforcement agencies. The Supreme Court has directed that the courts turn to legislative history when confronted with such ambiguity. *Train v. Colorado Pub. Interest Research Group*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). Whatever ambiguity lies in the statute must be forever dispelled by the rather lengthy legislative history on this point. ·This court could not improve on the careful workmanship of Circuit Judge Wallace in a recent dissent and will therefore quote it at length:

> As originally proposed by Senator Hart, subsection (b)(7)(D) exempted "[i]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . disclose the identity of an informer . . . ." *See* House Comm. on Government Operations & Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents 332 (Joint Comm. Print 1975) [hereinafter cited as Source Book]. At the time of his introduction of the amendment, Senator Hart stated:
>
> > Fourth, the amendment protects without exception and without limitation the identity of informers. It protects both the identity of informers and information which might reasonably be found to lead to such disclosure. These may be paid informers or simply concerned citizens who give information to enforcement agencies and desire their identity to be kept confidential.
>
> Source Book, *supra*, at 333–34. *See also id*, at 351 (Memorandum letter from Senator Hart).
>
> In response to President Ford's concerns, the Conference Committee substituted "confidential source" for "informer." *Id.* at 367, 378, 450–51, 459 (remarks

of Senators Kennedy and Hart and Congressman Moorhead). Its joint explanatory report, which "represents the considered and collective understanding of those [legislators] involved in drafting and studying proposed legislation," *Zuber v. Allen*, 396 U.S. 168, 186, [90 S.Ct. 314, 325, 24 L.Ed.2d 345] (1969), said:

> > The Substitution of the term "confidential source" in section 552(b)(7)(D) is to make clear that the identity of a *person* other than a paid informer may be protected if the *person* provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement purposes—either civil or criminal in nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source *who* furnished the information.
>
> H.R.Rep.No. 93–1380 & S.Rep.No. 93–1200, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News, p. 6285, 6291, *and in* Source Book at 230 (Emphasis added).
>
> My brethren disregard the clear language of this explanatory report by contending that the Conference Committee used "person" as a collective noun and that the expansive nature of their message precludes any restrictive reading of "confidential source." Not only is it unlikely that the Committee was using the law dictionary definition of person, as my brethren contend, but even if they were, that definition of the term would not include foreign, state, and local law enforcement agencies. *See, e. g.*, 1 U.S.C. § 1. The Committee's use of "person" in explaining the change from "informer" plainly reveals that their intent to protect only human sources had not changed. Moreover, the majority's reliance on the expansive intent of the Committee report is misplaced. General intent should not be used to controvert specific language; indeed, the Committee itself chose to ex-

press its intent by the term "person." [*Church of Scientology of California v. United States Dept. of Justice*, 612 F.2d 417 at 429–430 (9th Cir. 1979) (dissent) (footnote omitted).]

■ The court has chosen to rely on the dissent rather than the majority in the *Church of Scientology of California* case.[5] Some courts, expressing concern over the public interest in cooperation between police authorities, have balanced competing interests in law enforcement and public disclosure to determine whether disclosure should be ordered.[6] But unlike § (b)(7)(C), where a court must determine whether disclosure would invade privacy to such an extent that an exemption should be allowed,[7] § (b)(7)(D) does not allow for court balancing of competing interests. Under § (b)(7)(D) the court must determine whether material contains "confidential sources." To understand what Congress meant by "confidential sources" the court has resorted to the time-honored and court-tested procedure of examining the legislative history. Once the legislative history produces an answer, a definition of "confidential sources," the court has only one further task: to apply that definition. Once the Congressional intent is determined, the court may not balance interests to decide whether to act on that Congressional intent.

■ The court holds that the term "confidential source" applies to *persons* providing information under assurances of confidentiality and not to law enforcement agencies.

■ The court turns now to the question of whether production of these thirty-seven documents would reveal "confidential information furnished only by the confidential sources." The defendants have made no attempt to present factual data substantiating the assertion that anything in these thirty-seven documents stems from individuals who are confidential sources as is required by § (b)(7)(D). Even more telling, most of the information in the documents at issue concerns events long past, some more than thirty years past. The Supreme Court held in *NLRB v. Robbins Tire & Rubber Co.* that the legislative history to § (b)(7) "suggests that the release of information in investigatory files *prior to the completion of an actual, contemplated enforcement proceeding* was precisely the kind of interference that Congress continued to want to protect against." 437 U.S. 214, 232, 98 S.Ct. 2311, 2322, 57 L.Ed.2d 159 (1978) (emphasis added) *quoted in Ray v. Turner*, 587 F.2d 1187, 1222 n. 91 (D.C.Cir. 1978) (concurrence of J. Skelly Wright, C. J.). Defendants have the burden of proving that the information at issue was compiled in the course of an "actual, contemplated enforcement proceeding." The defendants have not made any attempt to demonstrate this and there is nothing in the documents to lead the court to believe that such a demonstration is possible. Defendants' assertion of § (b)(7)(D) is therefore denied in its entirety.[8]

---

5. The court's (and Judge Wallace's) reading of the legislative history is shared by District Judge Grady, *Ferguson v. Kelley*, 448 F.Supp. 919, 925 (N.D.Ill.1978). *But see Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978); *Lesar v. United States*, 455 F.Supp. 921, 924 (D.D. C.1978) (Gesell, D. J.).

6. *Lesar v. United States*, 455 F.Supp. at 924; cf. *Church of Scientology of California v. United States Dept. of Justice*, 612 F.2d at 427 (recognizing public interest in cooperation between police agencies); *Nix v. United States*, 572 F.2d at 1005 (same). Although the concern for police cooperation is undoubtedly a very legitimate one, it is perhaps a concern that the judiciary should best convey in a private capacity.

7. *See* 147, *supra*.

8. Although defendants have not asserted a § (b)(7)(C) privacy exemption for the majority of these documents, the names, addresses and occasionally phone numbers of law enforcement personnel do appear in some of the documents. In accordance with the court's ruling above, *see* 147, *infra*, the court will allow a § (b)(7)(C) exemption for any names, addresses and phone numbers of law enforcement officers appearing in these documents.

By the same token, although the defendants have not asserted § (b)(2) for the majority of documents withheld on the basis of § (b)(7)(D) the court will allow a § (b)(2) exemption for any file and code numbers appearing in these documents.

Apart from the dispute over the exemptions, the parties are also in disagreement concerning the court's August 11, 1977 order for a search of Interpol headquarters in Paris, France. This court order required the defendants to provide a *Vaughn* index of all "records maintained at Interpol that were compiled, received, or maintained by NCB." The words "compiled, received and maintained" were used twice in the August 11, 1977 order. Memorandum Order at 3, 4. But lest there be any doubt, the defendants filed for and the court entertained a Motion for Clarification of this order. In the court's November 3, 1978 order denying defendant's Motion for Clarification the court once again repeated the terms "compiled, received or maintained." Despite all of the above, defendants requested Interpol to forward only those documents "created by and maintained by the Washington National Central Bureau of Interpol." Memorandum in Response to Plaintiff's Motion Under *Vaughn v. Rosen* for New Index and for a Further Search for Documents at 2. In addition, the defendants did not include in their request to Interpol's French headquarters documents relating to two of the search terms in plaintiff's initial request under the Act, "Scientology" and the "Church of Scientology." This too violates the court's orders of August 11, 1977 and November 3, 1978. Today the court orders the defendants yet again to comply with its original August 11, 1977 order.

The above is but one example of the government's general practice in this case of engaging in dilatory tactics.[9] It ill-be-

hooves the United States Government to participate with such cunning creativity in what can only be seen as an attempt to frustrate the will of Congress in enacting the Freedom of Information Act and this court in enforcing it. Accordingly, it is by the court this 17th day of April, 1980,

ORDERED, that defendants' Motion for Summary Judgment is granted as to all file and code numbers withheld under § 552(b)(2);[10] and

FURTHER ORDERED, that defendants' Motion for Summary Judgment is granted as to all names, addresses and phone numbers of government officials withheld under § 552(b)(7)(C);[11] and

FURTHER ORDERED, that plaintiff's Motion for Summary Judgment is granted as to all documents withheld under § 552(b)(7)(D);[12] and

FURTHER ORDERED, that defendants shall provide plaintiff on or before May 7, 1980 with a detailed justification, itemization, and indexing under *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), of those records maintained at Interpol, Paris, France that are responsive to plaintiff's Freedom of Information Act request and that were *compiled, received, or maintained* by NCB.

## ON MOTION FOR RECONSIDERATION

On April 17, 1980 this court granted summary judgment for the plaintiffs as to certain documents withheld by the United

---

**9.** Twenty-nine months after this court dismissed the government's first attempt at a *Vaughn* index as "conclusory," "accompanied by no factual support" and "utterly unsatisfactory in every respect," April 8, 1976 Memorandum and Order at 2, the government produced a *Vaughn* index that suffered from most of the same ills. September 10, 1979 Affidavit of Marydale Drury. Despite the fact that the court told defendants in its April 8, 1976 Memorandum and Order that it would permit them "one last opportunity to represent the public interest" and present the detailed justifications required in a *Vaughn* index, the court has nevertheless accepted and considered the government's third attempt. *See* Supplemental Affidavit of Marydale Drury (November 2,

1979). Although an improvement, this document still lacks the factual support necessary to a *Vaughn* index and is also in flagrant disregard of the United States Court of Appeals for the District of Columbia's recent dictate that if the government is to issue successive indices covering the same material they must be cumulative. *Founding Church of Scientology of Washington, D.C. v. Bell*, 603 F.2d 945, 949 (1979) (per curiam).

**10.** *See* n. 8, *supra*.

**11.** *Id.*

**12.** *Id.*

States National Central Bureau ["NCB"] of the International Police Organization. The defendants responded with a motion for reconsideration and a motion for summary judgment as to newly identified, withheld documents in their possession. This memorandum and order deals only with the defendants' motion for reconsideration.

■ The bulk of defendants' motion for reconsideration is nothing but a reargument of their original briefs and sheds no additional light on the controversy.[1]

■ The defendants' lengthy motion for reconsideration does raise one point worthy of response. On March 3, 1980 the United States Supreme Court handed down *Kissinger v. Reporters Committee for Freedom of the Press*, —— U.S. ——, 100 S.Ct. 960, 63 L.Ed.2d 267. In the *Kissinger* opinion the Court found that an agency is not withholding documents under the Freedom of Information Act unless those documents are in the agency's possession or control. *Id.* at ——, 100 S.Ct. at 968–71. Defendants in the present case argue that the documents in Interpol's France office are not in their "possession or control." Such a position can not be supported by the *Kissinger* opinion. First, in *Kissinger* the Court repeatedly referred to the lack of any Congressional intent to impose on an agency the burden of suing to retrieve records from a third party. There is no indication here that NCB would have to sue its Interpol, France headquarters to retrieve the documents. Indeed, NCB has already retrieved documents from Interpol, France in partial compliance with the court's earlier orders. Second, in discussing Congressional intent the *Kissinger*

Court adverted to § 552(a)(6)(A) & (B). Under this provision of the Act agencies may delay responding to requests under "unusual circumstances." The Act defines "unusual circumstances" as "the need to search for and collect the requested records from field facilities and other establishments that are separate from the office processing the request." While the provision makes no reference to filing suit to retrieve documents, it does specify the need to "search for and collect the requested records from field facilities and other establishments." This suggests that Congress expected agencies to search for their documents in affiliate offices. Finally, to rule otherwise in a case such as this could result in virtually exempting the NCB from the operation of the Act. NCB would simply have to transfer its records to its parent organization in France to avoid compliance entirely. Congress could not have intended such blatant evasion. Accordingly, it is by the court this 13th day of May 1980,

ORDERED, that defendants provide plaintiff immediately with a detailed justification, itemization, and indexing under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), of all those records maintained at Interpol, Paris, France that are responsive to plaintiff's Freedom of Information Act request and that were *compiled, received or maintained* by NCB; and

FURTHER ORDERED, that defendants provide plaintiff immediately with all documents withheld under § 552(b)(7)(D), except those documents withheld on privilege claims filed after this court's April 17, 1980 memorandum and order.

---

1. The defendants note an "ambiguity" in the court's memorandum and order. Defendants' Motion for Reconsideration and for Summary Judgment at 5. On page four of the court's April 17, 1980 opinion this court stated that the records in dispute were compiled by NCB " 'for law enforcement purposes.' " On page eight of the same opinion this court held that defendants had not met the burden of "proving that the information at issue was compiled in the course of an 'actual, contemplated enforcement proceeding,' " *quoting NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). There is, of course, no

contradiction in these two holdings. To be exempt under 5 U.S.C. § 552(b)(7)(D) documents must be *both* "investigatory records compiled for law enforcement purposes" and "a record compiled by a criminal law enforcement authority in the course of a criminal investigation." This court ruled in its April 17, 1980 memorandum and order that the defendants had met the former threshold, but since the records were not compiled in the course of an "actual, contemplated enforcement proceeding," the defendants had not met the latter threshold for exemption under § (b)(7)(D).