**FOUNDING CHURCH OF SCIENTOLOGY OF WASHINGTON, D. C., INC.**

v.

**Donald T. REGAN, Secretary of the Treasury, et al.**

**No. 80–1546.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1981.

Decided Dec. 31, 1981.

Certiorari Denied May 17, 1982.
See 102 S.Ct. 2242.

Marleigh Dover, Lang, Dept. of Justice, with whom Alice Daniel, Asst. Atty. Gen., Washington, D. C., at the time the brief was filed, Charles F. C. Ruff, U. S. Atty., and Leonard Schaitman, Dept. of Justice, Washington, D. C., were on the brief, for appellants.

Robert A. Seefried, with whom Earl C. Dudley, Jr., Washington, D. C., was on the brief, for appellee.

Before ROBINSON, Chief Judge, McGOWAN, Senior Circuit Judge, and PARKER,* District Judge.

Opinion for the court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

The Government appeals from an order of the District Court, 490 F.Supp. 144, requiring the United States National Central Bureau (USNCB) of the International Police Organization (Interpol) to disclose documentary materials, previously received from foreign police agencies through Interpol, concerning the Founding Church of Scientology of Washington, D. C., Inc. In reaching this determination, the court rejected the Government's[1] argument that Interpol is a confidential source within the meaning of Exemption 7(D) of the Freedom of Information Act (FOIA).[2] The court further directed the Government to retrieve and index similar documents, formerly but not currently in the possession of USNCB, from Interpol's files at its headquarters in Paris, France. Recent decisions of the Supreme Court and this court, by our analysis, control the questions here at issue, and require us to reverse the order under review.

## I.  BACKGROUND

Throughout this controversy, the focus has been on documents pertaining to the Church that are or were held by USNCB, the agency maintaining liaison between Interpol and the United States. Interpol[3] is an international body organized "to ensure and promote the widest possible mutual assistance between all criminal police authorities within the limits of the law existing in the different countries and in the spirit of the 'Universal Declaration of Human Rights.' "[4] The organization has its secretariat in Paris, France, where experts in various branches of law enforcement work to assist member countries in coordinating international efforts in that field by compiling and exchanging information on criminal activity.

Interpol has established a world wide communications network, but all actual investigative and enforcement functions are performed by domestic police authorities of participating governments. Each member country designates a national law enforcement agency—the United States has appointed USNCB—referred to as its "national central bureau," to serve as a message and information exchange between that country and Interpol. Official inquiries emanating from law enforcement entities within a member country are channeled

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. We refer to the appellants collectively as "the Government."

2. 5 U.S.C. § 552(b)(7)(D) (1976), quoted in text *infra* at note 15.

3. Our description of Interpol and USNCB is taken primarily from one of the affidavits submitted to the District Court.  Third affidavit of

Marydale Drury (filed May 8, 1980), J. App. 146 [hereinafter cited as Drury Affidavit].  Another description of Interpol and its operations may be found in *Sami v. United States*, 199 U.S. App.D.C. 173, 617 F.2d 755 (1979).  See also *Steinberg v. Interpol*, 672 F.2d 927 (D.C.Cir. 1981).

4. Interpol Const. art. 2 (1968), quoted in *Sami v. United States, supra* note 5, 199 U.S.App. D.C. at 176–177, 617 F.2d at 758–759 (1979).

through its national central bureau to Interpol, and the route is reversed for responses. The national central bureaus thus serve as transmitters between domestic law enforcers and Interpol, which, in turn, is the conduit of communication among the national central bureaus of different nations.

In 1975, the Church presented a FOIA request for access to all USNCB records relating to the Church and its founder, L. Ronald Hubbard.[5] Reacting thereto, USNCB released numerous documents, in whole or in part, but declined to disclose thirty-seven documents invoking Exemptions 2[6] and 7(C)[7] of FOIA as to some of the documents and claiming that all were shielded by Exemption 7(D).[8] In addition, USNCB informed the Church that several of the documents desired had been forwarded to Interpol in Paris, and that no copies had been retained.

Dissatisfied with this disposition, the Church filed suit in the District Court in an effort to obtain all of the materials it had asked for. The court conducted an *in camera* inspection of the documents still in USNCB's possession and sustained the Government's Exemption 2 and Exemption 7(C) claims as to some,[9] but rejected its Exemption 7(D) argument that all of the documents could justifiably be withheld because they consisted of confidential infor-

mation furnished only by a confidential source—that is, Interpol.[10] The court rested its holding on two independent grounds, ruling that only persons, not institutions, can be confidential sources within the meaning of Exemption 7(D),[11] and that the Government had failed to demonstrate that the documents were compiled in the course of actual law enforcement activity.[12] Consequently, the court ordered USNCB to release the information sought by the Church and not protected by Exemptions 2 and 7(C).[13]

Addressing the Church's contention that it was also entitled, by an earlier decision of the District Court,[14] to the documents forwarded by USNCB to Interpol, the court ordered USNCB to obtain and submit a *Vaughn* index[15] of the materials previously returned to Interpol.[16] On the Government's motion for reconsideration, the court reexamined its document-retrieval order in light of the Supreme Court's intervening decision in *Kissinger v. Reporters Committee for Freedom of the Press.*[17] Adopting the view that USNCB is essentially a field facility of Interpol, the court reasoned that "Congress expected agencies to search for their documents in affiliate offices,"[18] concluded that *Kissinger* was not controlling in the circumstances presented, and reaffirmed its original ruling.[19]

---

5. The request was subsequently narrowed to records falling under several specific headings. See Complaint, Exhibit C, J. App. 21.

6. 5 U.S.C. § 552(b)(2) (1976).

7. *Id.* § 552(b)(7)(C).

8. *Id.* § 552(b)(7)(D), quoted in text *infra* at note 20.

9. *Founding Church of Scientology v. Miller*, 490 F.Supp. 144, 146–147 (D.D.C.1980). Cross-motions for summary judgment provided the procedural posture of the case.

10. *Id.* at 147–150.

11. *Id.* at 149.

12. *Id.*

13. *Id.* at 150.

14. *Founding Church of Scientology v. Blumenthal*, No. 75–1471 (D.D.C. Aug. 11, 1977), clarified sub nom. *Founding Church of Scientology v. Simon*, No. 75–1471 (D.D.C. Nov. 3, 1978).

15. See *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

16. 490 F.Supp. at 150.

17. 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).

18. *Founding Church of Scientology v. Miller*, 490 F.Supp. 144, 150, 151 (D.D.C. May 13, 1980) (memorandum and order on reconsideration) [hereinafter cited as "Decision on Reconsideration"].

19. *Id.* The court subsequently granted the Government's motion for a stay of the disclosure order pending appeal. *Founding Church of Scientology v. Miller*, Civ.No.75–1471 (D.D.C. May 28, 1980) (stay order), J. App. 526.

## II. EXEMPTION 7(D)

### A. *The Meaning of "Confidential Source"*

█ Exemption 7(D) of FOIA insulates from mandatory disclosure

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.... [20]

In part, the District Court based its ruling that Exemption 7(D) was inapplicable on its view that the term "confidential source" was meant to apply only to individuals and not to institutions.[21] In the interval since the court made this interpretation, however, we have decided two cases taking the diametrically opposite stance.

In *Lesar v. United States Department of Justice*,[22] we were confronted with the question whether the Department was justified in refusing to disclose an appendix to

a special task force report on the assassination of Dr. Martin Luther King, Jr. The contents of the appendix included investigative files compiled by the Memphis, Tennessee, and Atlanta, Georgia, police departments and surrendered to the Federal Bureau of Investigation in return for a promise of confidentiality. We held that the materials constituted confidential information furnished only by a confidential source, and thus that they could lawfully be withheld.[23] In so determining, we rebuffed Lesar's argument that Exemption 7(D) safeguards only information provided by human sources. Our study of the legislative history of this exemption revealed that "Congress did not intend to distinguish among the types of sources, afforded protection under Exemption 7(D)." [24] We therefore held "that the word 'source' in Exemption 7(D) includes not only individuals such as private citizens and paid informants but also entities such as the state and local law enforcement agencies [there] involved." [25] We reaffirmed this position in *Baez v. United States Department of Justice*,[26] where we held that " 'the word source includes nonfederal entities such as state, local, and foreign law enforcement agencies." [27]

**20.** 5 U.S.C. § 552(b)(7)(D) (1976).

**21.** *Founding Church of Scientology v. Miller*, *supra* note 9, 490 F.Supp. at 147–149.

**22.** 204 U.S.App.D.C. 200, 636 F.2d 472 (1980).

**23.** *Id.* at 220, 636 F.2d at 492.

**24.** *Id.* at 219, 636 F.2d at 491.

**25.** *Id.*

**26.** 208 U.S.App.D.C. 199, 647 F.2d 1328 (1980).

**27.** *Id.* at 211, 647 F.2d at 1340. The appellant had requested the FBI to produce all information referring to her in files maintained under her name or under the names of other individuals or organizations. *Id.* at 201, 647 F.2d at 1330. Invoking Exemption 7(D), the Government wanted to withhold the identities of state, local, and foreign agencies that had provided information to the agency in confidence. Reiterating the substance of our holding in *Lesar*, we upheld the FBI's refusal to release the data sought, commenting that "Exemption 7(D) protects not only information furnished by a confidential source but the identity of the confidential source as well." *Id.* at 211, 647 F.2d at 1340.

We realize that *Baez* and *Lesar* are distinguishable on their facts. The names of the confidential institutional sources in *Baez* were unknown, but the identities of the suppliers of the records sought in *Lesar*—the Atlanta and Memphis police departments—were clearly established. In the present case, it has been suggested that the *Lesar* holding was in error because Exemption 7(D) cannot apply when the identity of the confidential source has already been disclosed and the sole purpose of withholding is to protect the information and not its source. But whatever the merit of this thesis, we do not consider it, for we are bound by our prior holding in *Lesar*. In the case before us, Interpol is in a position precisely analogous to that of the Atlanta and Memphis police departments in *Lesar*. Although it is known that Interpol was the source of the information in dispute—if indeed it is a confidential source, see note 47 *infra*—*Lesar* compels us to uphold USNCB's refusal to disclose the materials provided by Interpol.

In any event, we do not think this distinction is important here. USNCB has refused to release the records here sought because it fears divulgence of the identities of the foreign police authorities that submitted the materials to In-

In light of *Lesar* and *Baez*, the construction that the District Court placed on "confidential source" cannot be accepted.

### B. The Necessity of an "Actual, Contemplated Law Enforcement Proceeding".

■ Additionally to concluding that the Government was unable to satisfy the confidential-source requirement of Exemption 7(D), the District Court ruled that the documents requested by the Church must be relinquished because the Government had not shown that the information withheld was obtained "in the course of an 'actual, contemplated enforcement proceeding.'" [28] The court found that the materials in question had been compiled for law enforcement purposes,[29] but it ruled that the absence of an ongoing law enforcement proceeding was fatal to the Government's dependence on Exemption 7(D) to protect the data from disclosure.[30] We agree with the Government that this holding is in error. The pertinent language of Exemption 7(D) refers specifically to assemblies of information for "law enforcement purposes," [31] and we see no reason to read any further requirement into it.

In deeming an ongoing enforcement activity a precondition to operation of Exemption 7(D), the District Court relied to a large extent on *NLRB v. Robins Tire and Rubber Co.*,[32] where the Supreme Court held that to invoke Exemption 7(A) the Government must demonstrate that the information it seeks to withhold was compiled during the course of "actual, contemplated enforcement proceedings." [33] In marked contrast to Exemption 7(D), however, Exemption 7(A), safeguards materials compiled for law enforcement purposes "only to the extent that the production of such records would ... *interfere with enforcement proceedings*." [34] It is difficult to imagine how such interference could occur except during the course of "actual contemplated enforcement proceedings," and the risk of harm which Exemption 7(A) is designed to avoid thus exists only for the period when enforcement efforts are actively being pursued.

Conversely, Exemption 7(D) protects against the damage that might be done by

---

terpol for transmittal to USNCB, as well as the sources utilized by those authorities and the substance of the information provided. See Drury Affidavit, *supra* note 3, at 9–14, J. App. 154 -159. In this respect, Interpol was merely a conduit for those confidential sources. To command the release of information received from Interpol when that would not be required had USNCB received the data directly from the foreign law enforcement agencies would be nonsensical. Thus, contrary to the Church's assertions, this really is a case where the effort is to shield both the identity of the confidential sources and the information they supplied.

**28.** *Founding Church of Scientology v. Miller*, *supra* note 9, 490 F.Supp. at 149.

**29.** *Id.* at 147. More precisely, the District Court stated that "[d]espite its lack of law enforcement authority, there can be no question that the records involved here were compiled by Interpol to relay to other police entities 'for law enforcement purposes.'" *Id.* Given the context of the District Court's statement, it appears that "Interpol" refers to USNCB as well as to the international organization headquartered in Paris. The nature of the "law enforcement purposes" requirement has been explored previously by this court, see, *e.g.*, *Abramson v. FBI*, 212 U.S.App.D.C. 58, 658 F.2d 806 (1980), *cert. granted*, 452 U.S. 937,

101 S.Ct. 3079, 69 L.Ed.2d 951 (1981); *Weissman v. CIA*, 184 U.S.App.D.C. 117, 119–121, 565 F.2d 692, 694–696 (1977); *Rural Housing Alliance v. United States Dep't of Agriculture*, 162 U.S.App.D.C. 122, 128–131, 498 F.2d 73, 79–82 (1974) (decided prior to enactment of 1974 FOIA amendments), as well as other circuits, see, *e.g.*, *Irons v. Bell*, 596 F.2d 468, 472–476 (1st Cir. 1979); *Kuehnert v. FBI*, 620 F.2d 662, 666–667 (8th Cir. 1980); *Founding Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 748–749 (9th Cir. 1979). Since no challenge has been raised to the holding that the documents were compiled for law enforcement purposes, we need not address that question in this case.

**30.** *Founding Church of Scientology v. Miller*, *supra* note 9, 490 F.Supp. at 149.

**31.** 5 U.S.C. § 552(b)(7)(D), quoted in text *supra* at note 20. See note 29 *supra*.

**32.** 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

**33.** *Id.* at 232, 98 S.Ct. at 2322, 57 L.Ed.2d at 172.

**34.** 5 U.S.C. § 552(b)(7)(A) (1976).

disclosure of the identity of a confidential source or release of information supplied only by such a source. The danger inherent in divulgence of such data is not eliminated by the culmination of enforcement proceedings or by a decision that the information on hand does not warrant initiation of such proceedings.[35] We therefore hold that Exemption 7(D) does not require a showing that enforcement proceedings are currently under way, but only that the sought-after materials were amassed for law enforcement purposes.[36] We therefore reject the District Court's holding that the Government must demonstrate the existence of an actual contemplated enforcement proceeding to satisfy the demands of Exemption 7(D).

## III. RETRIEVAL OF THE DOCUMENTS FROM INTERPOL HEADQUARTERS

■ The Freedom of Information Act empowers federal courts to compel disclosure of agency records improperly withheld, but does not confer authority upon the courts to command agencies to acquire a possession or control of records they do not already have. This principle was firmly established by the Supreme Court's recent decision in *Kissinger v. Reporters Committee for Freedom of the Press*,[37] in which the Court held that an agency could not be required to undertake retrieval of documents removed—even though arguably improperly—from its custody. The materials in question were notes of Kissinger's telephone conversations during his tenure as Secretary of State and Assistant to the President for National Security Affairs. Kissinger had taken the documents with him when he left office, and the legality of their removal was open to question.[38] Despite the fact that the agency might have been able to regain possession of the documents by bringing suit against Kissinger pursuant to specific authorization granted by the Federal Records Act,[39] the Court held that it could not be required to do so.[40] The Court reasoned that "Congress did not mean that an agency improperly withholds a document which has been removed from the possession of the agency prior to the filing of the FOIA request. In such a case, the agency has neither the custody nor control necessary to enable it to withhold."[41]

■ In the case at bar, the District Court ruled that *Kissinger* was inapposite because, in its view, USNCB and Interpol are

**35.** See *Bast v. United States Dep't of Justice*, 665 F.2d 1251, 1254 (5th Cir. 1981). See also *Rural Housing Alliance v. United States Dep't of Agriculture, supra* note 29, 162 U.S.App.D.C. at 129, 498 F.2d at 80. Although decided prior to the 1974 amendments of FOIA, the policy considerations expressed are still relevant.

**36.** We note that the question whether an ongoing enforcement proceeding is required differs from the question whether the agency seeking refuge in Exemption 7(D) compiled the information for law enforcement purposes, see note 29 *supra*, and from the question whether the agency was conducting "a criminal investigation, or ... a lawful national security intelligence investigation," a prerequisite to operation of Exemption 7(D). 5 U.S.C. § 552(b)(7)(D) (1976), quoted in text *supra* at note 20. In *Lesar v. Department of Justice, supra* note 22, we indicated that the agency may be required to demonstrate that withheld information was compiled in the course of a *legitimate* investigation of that type. See *Lesar v. Department of Justice, supra* note 22, 204 U.S.App.D.C. at 220, 636 F.2d at 492. Further guidance may be forthcoming from the Su-

preme Court since certiorari was recently granted in a case involving a distinct but related question. See *Abramsom v. FBI, supra* note 29 (certiorari granted on question whether information compiled for law enforcement purposes and privileged from disclosure under Exemption 7(C) loses its exempt status when incorporated into records compiled for purposes other than law enforcement). We need not address that issue in this case, however, since the Church has not challenged the legitimacy of USNCB's purposes in requesting the information concerning the Church from Interpol.

**37.** *Supra* note 17.

**38.** 445 U.S. at 146–147, 100 S.Ct. at 966–967, 63 L.Ed.2d at 267.

**39.** 44 U.S.C. § 3106 (1976).

**40.** 445 U.S. at 150, 100 S.Ct. at 968–969, 63 L.Ed.2d at 281.

**41.** *Id.* at 150–151, 100 S.Ct. at 969, 63 L.Ed.2d at 281.

not entities independent of each other. The court took the position that USNCB was required to retrieve the sought-after documents from Interpol under the FOIA section providing for search and collection of "the requested records from field facilities and other establishments that are separate from the office processing the request."[42] We do not agree with that rationale. Although USNCB is an affiliate of Interpol, it serves only as the United States liaison with the organization; it is neither a branch nor an agent of Interpol. This characterization is in accord with *Sami v. United States,*[43] where we held that "USNCB act[s] exclusively as an agent of the national government which created, staffed, financed and equipped it,"[44] and that therefore the presence of USNCB in the District of Columbia was not enough to establish a predicate for personal jurisdiction of the District Court over Interpol.[45]

The same reasoning applies full force in the instant case. If USNCB is not sufficiently related to Interpol to subject the latter to the jurisdiction of the District Court, surely Interpol is a third party in the eyes of *Kissinger.* In sum, we agree with the Government that "[t]he relationship of the USNCB to Interpol is ... like that of the United States to the United Nations. Although a member of the organization, the

USNCB is not Interpol."[46] Consequently, we disapprove the District Court's order requiring USNBC to retrieve and index the documents already forwarded to Interpol.

For the reasons set forth, the District Court's orders appealed from are reversed, and the case is remanded for further proceedings consistent with this opinion.[47]

*So ordered.*

---

**42.** Decision of Reconsideration, *supra* note 18, 490 F.Supp. at 151, citing 5 U.S.C. § 552(a)(6)(B) (1976). In cases where records are located in field facilities the agency is permitted more time to produce the sought-after materials. 5 U.S.C. § 552(a)(6)(B) (1976).

**43.** *Supra* note 4.

**44.** *Id.* at 178, 617 F.2d at 760.

**45.** *Id.* But *cf. Steinberg v. Interpol, supra* note 3.

**46.** Brief for Appellants at 15. We decline to accept the Church's argument that the Government's retrieval of some Interpol documents precludes USNCB from refusing to attempt to obtain the rest.

**47.** As counsel for the Government acknowledged at oral argument, one question the District Court must determine on remand is whether or not Interpol actually did furnish the requested information to USNCB in confidence.

The Government has suggested that the Interpol constitution and at least one United Nations General Assembly resolution may be relevant to this question, as would the affidavit of USNCB personnel asking for the information.

We also pause to point out that we intend no comment one way or the other on the sufficiency of the affidavits or *Vaughn* index provided to the District Court by the Government. The court indicated that the Government had been severely deficient in its responsibilities both with respect to the affidavits and the indices submitted. Our decision in this case is limited strictly to the three legal questions presented for review. Contrary to the Church's contentions, we find no basis for extending our review to an examination of the affidavits and indices before the District Court. Whether or not summary judgment on the Exemption 7(D) issue ultimately may be granted in favor of either party is for the District Court to decide in the first instance.