Concurring opinion filed by Circuit Judge SRINIVASAN.
SENTELLE, 'Senior Circuit Judge:
Competitive Enterprise Institute appeals from a judgment of the district court dismissing its Freedom of Information Act (FOIA) action against the Office of Science and Technology Policy (OSTP). Appellant contends that the district court improperly ruled that documents which might otherwise be government records for FOIA purposes need not be searched for or turned over to the requestor because the head of the defendant agency maintained the putative records on a private email account in his name at a site other than the government email site which the agency had searched. Because we agree with plaintiff-appellant that an agency cannot shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head, we reverse the dismissal and remand the case for further proceedings.
BACKGROUND
FOIA requires, subject to certain statutory exceptions, that each federal agency upon a proper request for records “shall make the records promptly available to any person.” 5 U.S.C. § 552(a)(3)(A). The statutory duty of disclosure imposed upon the agencies includes the duty to “search for the records in electronic form or format....” 5 U.S.C. § 552(a)(3)(C). Appellant Competitive Enterprise Institute (CEI), in October of 2013, submitted a FOIA request for “all policy/OSTP-related email sent to or from jholdren@whrc.org (including as cc: or bcc:).” J.A. at 35. The email address set forth in the FOIA request is a nonofficial account maintained by John Holdren, Director of OSTP, at Woods Hole Research Center. CEI had learned from a Vaughn Index in another, earlier FOIA litigation that the address had apparently been used for some work-related correspondence.
In February of 2014, OSTP sent a response refusing to provide records from the address on the basis that such records *147 were “beyond the reach of FOIA” because they were in an “account” that “is under the control of the Woods Hole Research Center, a private organization.” J.A. at 11. OSTP did not in its response state that it had made any attempt to search for records in that email account responsive to the FOIA request, nor has it at any time in this litigation asserted any claim to have made such a search. CEI exhausted administrative appeals and brought the present litigation, seeking an injunction mandating production of “[w]ork-related emails sent to or from the account.” J.A. at 23. OSTP moved under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. OSTP argued that because the email account at issue was “not under the control of the agency,” its contents were not within the agency documents required to be produced under FOIA, nor was the agency capable of conducting a search. Appellee’s Br. at 1. The district court agreed and granted the 12(b)(6) motion. CEI timely appealed.
ANALYSIS
The basic task of a court in adjudicating alleged wrongful withholdings under FOIA is framed under three Acts of Congress. The Federal Records Act of 1950, 44 U.S.C. § 2901 et seq., authorizes the establishment of “records management program[sj” and provides for the preservation of agency records. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 147, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). A complementary statute, the Records Disposal Act, 44 U.S.C. § 3314, provides the exclusive means for record disposal. Id. Yet, neither the Federal Records Act nor the Records Disposal Act contemplate a private right of action for access to or recovery of federal records. Id.. at 150, 100 S.Ct. 960. The FOIA itself, however, establishes the relevant private right. Jurisdiction under FOIA requires “a showing that an agency has (1) ‘improperly; (2) ‘withheld’; (3) ‘agency records.’” Id. at 150, 100 S.Ct. 960 (quoting 5 U.S.C. § 552(a)(4)(B)). Our task, then, is to determine whether the pleadings in the present case allege these requirements sufficiently to survive a motion under Rule 12(b)(6). As applied to the present case, our attention, and that of the district court, focuses first at this stage on whether the agenc/s refusal to undertake a search of the records of the director’s private email account amounts to a “withholding,” and specifically, an “improper” one.
At each stage of this litigation, appellee has argued that “[d]oeuments on a nongovernmental email server are outside the possession or control of federal agencies, and thus beyond the scope of FOIA.” Ap-pellee’s Br. at 14. In pursuing that defense, appellee repeatedly refers to the email account as being “under the control” of the Woods Hole Research Center, a private entity. See, e.g., Appellee’s Br. at 6, 8. Appellant has consistently challenged the logic of the proposition that the director of an agency may place his work-related records beyond the reach of FOIA for the simple expedient of using a private email account rather than the official government communications system. Although neither party is able to produce a binding precedent in this court or the Supreme Court addressing precisely the question before us, each has offered cases in some way relevant to our consideration of the issue.
The government first offers Founding Church of Scientology of Washington, D.C., Inc. v. Regan, 670 F.2d 1158 (D.C. Cir. 1981), for the fundamental proposition that “[t]he Freedom of Information Act empowers federal courts to compel disclosure of agency records improperly withheld, but does not confer authority *148 upon the courts to command agencies to acquire a possession or control of records they do not already have.” Id. at 1163. While correct, and undoubtedly logical, Founding Church does little to answer the question before us. A brief comparison of the facts of that case with those at bar makes that evident. In that case, the re-questor sought documents from the United States National Central Bureau (USNCB) of the International Police Organization (Interpol) previously obtained from foreign police agencies and concerning the plaintiff-organization. Id. at 1159. It appears that there was no dispute that the documents were in the possession of Interpol, not an agency of the United States. It also is unsurprising that we reversed a district court order directing the federal government to obtain records from the international organization. This does nothing to advise us as to whether an agency must turn over email records housed in an email account of the agency head, but at a nongovernmental domain.
This court in Founding Church, as did the government in its brief, relied on Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). As the government urges in its brief, the Kissinger decision “recognized that the FOIA does not ‘furnish congressional intent to permit private actions to recover records’ that are not within the agency’s ‘possession or control.’ ” Appellee’s Br. at 15 (quoting Kissinger, 445 U.S. at 137-38, 155, 100 S.Ct. 960). Again, the quotation from the Supreme Court in Kissinger obviously states the law, but is not controlling on the facts before us. The records in Kissinger, the Secretary of State’s notes concerning official telephone conversations, were no longer in the custody of the Department of State or under the control of Secretary Kissinger. See 445 U.S. at 155, 100 S.Ct. 960. The documents in question had been donated to the Library of Congress, which was not a party to the action. Id. at 154-55, 100 S.Ct. 960. The Supreme Court unsurprisingly ruled that the Department did not have to produce what it did not have. See id. at 158, 100 S.Ct. 960. Again, that does not speak to the question before us.
Like our separately concurring colleague, we believe that Kissinger is distinguishable. Indeed, we may believe this more strongly than our colleague. As our colleague rightly observes, in Kissinger, “the Secretary not only was ‘holding the documents ... at the time the requests were received,’ but he was ‘holding the documents under a claim of right.’ ” Concurring Op. at 152 (quoting Kissinger, 445 U.S. at 155, 100 S.Ct. 960) (emphasis in concurrence). While this accurately states one difference from the present ease, we think it is not the only, or even the most compelling difference.
Not only did the Secretary hold the document under a claim of right, it appears that the Department had effectively ceded the documents to him. As the Supreme Court relates:
The second FOIA request was filed on December 28 and 29, 1976, by the Military Audit Project (MAP) after Kissinger publicly announced the gift of his telephone notes to the United States and their placement in the Library of Congress. The MAP request, filed with the Department of State, sought records of all Kissinger’s conversations made while Secretary of State and National Security Adviser. On January 18, 1977, the Legal Adviser of the Department of State denied the request on two grounds. First, he found that the notes were not agency records. Second, the deposit of the notes mth the Library of Congress prior to the request terminated the Department’s *149 custody and control. The denial was affirmed on administrative appeal.
The third FOIA request was filed on January 13, 1977, by the Reporters Committee for Freedom of the Press (RCFP), the American Historical Association, the American Political Science Association, and a number of other journalists (collectively referred to as the RCFP requesters). This request also sought production of the telephone notes made by Kissinger both while he was National Security Adviser and Secretary of State. The request was denied for the same reasons given to the MAP reques-ters.
Kissinger, 445 U.S. at 143-44, 100 S.Ct. 960 (emphasis added).
There is no assertion by the agency before us that it has ceded the relevant records to the Director. Indeed, if it is ultimately determined that there are agency records in the requested data, it seems unlikely that the agency could legally cede the records under the Federal Records Act and the Records Disposal Act. However, we need not on the present record determine whether there are agency records among the data sought, nor the legality of ceding such records. It is sufficient to conclude, as our colleague agrees, that Kissinger does not control the case before us.
More nearly on point is Burka v. U.S. Department of Health and Human Services, 87 F.3d 508 (D.C. Cir. 1996). In Burka, a requestor sought disclosure from the Department of Health and Human Services of data tapes and questionnaires regarding smoking habits and attitudes conducted by an agency within the Department. 87 F.3d at 510-13. As relevant here, we held in Burka, that the agency must search and disclose records that were not on its premises but were under its “constructive control.” Id. at 515. This comes closer to the question before us.
More helpful still is Ryan v. Department of Justice, 617 F.2d 781 (D.C. Cir. 1980), in which a requestor sought documents from the Department of Justice which were within the exclusive control of the Attorney General. Id. at 786. The Department asserted that the documents were not within the agency since they were under the exclusive control of its head. In rejecting that argument, we concluded that there is no basis in the FOIA “to view the Attorney General as distinct from his department for FOIA purposes.” Id. at 787. In other words, an agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door or because he is the head of the agency.
This seems to us to be the only resolution that makes sense. If the agency head controls what would otherwise be an agency record, then it is still an agency record and still must be searched or produced. The agency’s claim before us simply makes little sense. That argument relies on the proposition that the emails in question are under the control of a private entity, not the government. That private entity is Woods Hole Research Center, apparently the owner of the “whrc.org” domain where Director Holdren of the OSTP maintains the account jholdren@ whrc.org. While this specific fact is not addressed in the record, it is not apparent to us that the domain where an email account is maintained controls the emails therein to the exclusion of the user, in this case Director Holdren, who maintains the account. When one receives an email from John Doe at, for example, gmail.com, and replies thereto, the replier would be likely *150 to think that message is going to John Doe, not gmail.com. Even so here.
Further, appellee’s argument is inconsistent with the purpose of FOIA. The Supreme Court has described the function of FOIA as serving “the citizens’ right to be informed about what their government is up to.” U.S. Dep’t of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (internal quotation marks and citation omitted). If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served. It would make as much sense to say that the department head could deprive requestors of hard-copy documents by leaving them in a file at his daughter’s house and then claiming that they are under her control.
If by some means Woods Hole Research Center has lawfully acquired exclusive possession and control of agency records that were formerly in the possession of John Holdren, the government has not demonstrated this. We therefore reverse the district court’s grant of dismissal in favor of the appellee, and remand the case for further proceedings consistent with this opinion.
We make clear that we are not ordering the specific disclosure of any document. It may be that OSTP has valid exemption claims, or even that no document found among the jholdren@whrc.org email falls within the definition of “agency records.” However, those questions are for litigation in the district court in the first instance.
CONCLUSION
For the reasons set forth above, we reverse the judgment of dismissal entered by the district court and remand this case for further proceedings consistent with this opinion.

So ordered.