The FOUNDING CHURCH OF SCIEN-
TOLOGY OF WASHINGTON, D.C.,
INC., Plaintiff,

v.

Edward LEVI, et al., Defendants.

Civ. A. No. 75–1577.

United States District Court,
District of Columbia.

Nov. 4, 1982.

Robert A. Seefried, Earl C. Dudley, Sally A. Regal, Washington, D.C., for plaintiff.

Nathan Dodell, Ass't U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

The Founding Church of Scientology brought this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), in 1975 seeking disclosure of all records of the Federal Bureau of Investigation (FBI) pertaining to the Church, its related organizations and its founder, L. Ron Hubbard. After two appeals, the case is again before this Court on cross motions for summary judgment.

### I.

Although a large number of the documents originally requested by the Church were released, the FBI initially withheld certain records under Exemptions 1, 2, 3, 5, 7(A), 7(B), 7(C) and 7(D) of FOIA, 5 U.S.C. §§ 552(b)(1), 552(b)(2), 552(b)(3), 552(b)(5), 552(b)(7)(A), 552(b)(7)(B), 552(b)(7)(C), 552(b)(7)(D). In 1978, this Court granted the FBI's motion for summary judgment on its claims of exemption. *Founding Church of Scientology v. Levi*, Civ. No. 75–1577 (D.D.C.1978) (memorandum and order). The Court of Appeals reversed and remanded the case for re-indexing by the FBI and re-examination under the new index by this Court. *Founding Church of Scientology v. Bell*, 603 F.2d 945 (D.C.Cir. 1979). Following additional releases of material by the FBI, this Court granted the FBI's motion for summary judgment on the remaining issues under Exemption 5. *Founding Church of Scientology v. Levi*, Civ. No. 75–1577 (D.D.C.1980) (memorandum and order). The Court of Appeals reversed and remanded again, directing *de novo* review of all the original claims of exemption under the new index by this Court. *Founding Church of Scientology v. Smith*, No. 75–1577 (D.C.Cir., filed Sept. 1, 1981) (unpublished opinion).

At this point, the Church's claims on a large number of the documents involved have been settled by the parties, and only the FBI's claims of exemption under Exemption 7(D) and Exemption 2 of the FOIA are at issue here. Under Exemption 7(D), the FBI has withheld material from documents A–18(a), 18(b), 38(a), 38(b), 46(a), 46(b), 51, 60(a), 60(b), 70(a), 75(a), 75(b), 82,

83, 120(a), 121, 122(a), 122(b), 127, 132, 133(a), 133(b), 140(a), 140(b), 141, 142, 148(a), 148(b), 154, 160, 166, 167(a), 171, 177, 178(a), 178(b), 183, 189, 193(a), 193(b), 212; B–3, 8, 15(b), 32, 44; E–2; F–3(b); I–1(b), 2(a), 5 and 9. Exemption 2 has been used to withhold material only from document A–13. Both parties have filed motions for summary judgment.

The FBI relies upon the affidavit of Special Agent Martin Wood, filed October 22, 1979 in support of the FBI's second motion for summary judgment. Also filed at that time was Exhibit A, a document-by-document *Vaughn* index, and Exhibit B, copies of all the reprocessed and redacted documents as they were released to the Church. In addition, Special Agent John N. Phillips filed his affidavit on May 28, 1982 supplementing the Wood affidavit and addressing the specific concerns raised in the FBI's most recent motion for summary judgment. Despite the Church's contentions to the contrary, the Court finds the Wood and Phillips affidavits competent for specified purposes discussed below,[1] *see* Fed.R.Civ.P. 56(e), and has accorded the affidavits "substantial weight," *e.g., Ray v. Turner*, 587 F.2d 1187, 1191–94 (D.C.Cir. 1978); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C.Cir.1977), utilizing them in conjunction with the accompanying exhibits.

## II.

Under Exemption 7(D), an agency may withhold "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation ... confidential information furnished only by the confidential source." 5 U.S.C. § 552(b)(7)(D). To meet the first part of the two part inquiry necessitated by Exemption 7, a requested document must be shown to be an investigatory record "compiled for law enforcement purposes." *FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 50 U.S.L.W. 4530, 4532 (U.S. May 24, 1982); *Pratt v. Webster*, 673 F.2d 408, 411–16 (D.C.Cir.1982). There are two critical conditions which must be met before a law enforcement agency passes the Exemption 7 threshold: "First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.... Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Id.* at 420–21 (emphasis omitted). After full examination of both the affidavits and the actual redacted documents, this Court is convinced that the documents at issue easily qualify as "investigatory records for law enforcement purposes." *See* 5 U.S.C. § 552(b)(7).

According to the Wood affidavit, File A, from which portions of thirty-one documents have been withheld and remain in dispute, consists of communications received by the FBI from private individuals complaining of Church conduct or requesting information about Church activities. The file also contains memoranda from other law enforcement agencies and information generated as a result of field office checks. File B, from which portions of five documents have been withheld and remain in dispute, contains the same type of information contained in File A, but with regard to L. Ron Hubbard and Allied Scientists of the World. File E, from which only a small portion of one document remains withheld and in dispute, contains communications between L. Ron Hubbard and the FBI, and an inter-office memorandum concerning an investigation into a matter raised in Hubbard's letter. File F, from which part of one disputed document remains withheld, contains inter-agency memoranda, compiled in connection with the case of *Scientology v. United States*, 412 F.2d 1197, 188 Ct.Cl. 490 (Ct.Cl.1969), concerning the tax status

1. *See* Part III *infra.*

of the Church. File I, from which parts of four documents remain withheld and in dispute, contains inter-agency memoranda concerning Hubbard and his various organizations, indexed according to types of federal violations. The Phillips affidavit, as well as the copies of the redacted documents themselves, present ample grounds for legitimate concern on the part of the FBI that federal laws had been or might be violated by L. Ron Hubbard, the Church or affiliated organizations. Among the criminal activities of which the Church or its affiliates were suspected were the unlicensed teaching of medicine and surgery, mail fraud, false representation and misbranding of medical devices, blackmail and tax evasion. This was not a case in which the FBI engaged in indiscriminate collection of information surrounding the Church and its founder in hopes of unearthing a violation of some federal law; rather, the FBI's investigations were prompted by concerned citizens, law enforcement authorities and the Church itself. That a full-scale fraud or criminal proceeding was not ongoing or has not been undertaken is not essential to the invocation of the 7(D) exemption, as long as the sought after materials were amassed for law enforcement purposes. *Founding Church of Scientology v. Regan*, 670 F.2d 1158, 1162–63 (D.C.Cir. 1981). The Exemption 7(D) threshold has clearly been satisfied here, since the FBI's concern obviously had a plausible basis and a rational connection to the Church's activities. *See Pratt v. Webster*, 673 F.2d at 421 (D.C.Cir.1982).

Once the threshold requirements have been satisfied, Exemption 7(D) contains two separate exemptions. Under it, an agency may withhold records which would "disclose the identity of a confidential source," and "in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation ... confidential information furnished only by the confidential source." 5 U.S.C. § 552(b)(7)(D). *E.g., Duffin v. Carlson*, 636 F.2d 709, 712 (D.C.Cir.1980). With regard to the *identities* of "confidential sources" which the FBI seeks to withhold,

the Church argues that certain of the entities named by the FBI as "confidential sources" are not within the definition of that statutory term. Additionally, the Church asserts that there has been no showing of a confidential relationship between the FBI and the sources it names, such that the exemption would apply.

It is well-established in this circuit that Congress did not intend to distinguish among the types of sources afforded protection under Exemption 7(D). *Founding Church of Scientology v. Regan*, 670 F.2d at 1161 (quoting *Lesar v. United States Department of Justice*, 636 F.2d 472 (D.C. Cir.1980)). The FBI's withholding of the identities of state, local and foreign law enforcement agencies in this case is clearly proper under *Baez v. United States Department of Justice*, 647 F.2d 1328, 1340 (D.C.Cir.1980). The Court in *Baez* held that the word "source" includes "nonfederal entities such as state, local, and foreign law enforcement agencies as well as individuals such as private citizens and paid informants." *Id.* (citing *Lesar v. United States Department of Justice*, 636 F.2d at 489) (footnote omitted). The FBI has also invoked Exemption 7(D) to withhold the identities of commercial institutions which provided it with information regarding the Church. This too was proper, since the Congressional objective behind Exemption 7(D), to prevent a "drying up" of law enforcement agencies' sources of information, *see* 120 Cong.Rec. 36,865, 36,877 (1974) (remarks of Sen. Robert Byrd), applies equally with regard to commercial institutions, *compare Katz v. Department of Justice*, 498 F.Supp. 177, 184 (S.D.N.Y. 1979); *Ferguson v. Kelley*, 448 F.Supp. 919, 925 (N.D.Ill.1977), *with Dunaway v. Webster*, 519 F.Supp. 1059, 1082 (N.D.Cal. 1981); *Pacheo v. Federal Bureau of Investigation*, 470 F.Supp. 1091, 1103 (D.P.R. 1979), at least in the situation where specific information is requested and there is no claim of agency bad faith, *accord Baez v. United States Department of Justice*, 647 F.2d at 1341 (concurring opinion).

To establish the required confidentiality of a source under Exemption

7(D), *see Lesar v. United States Department of Justice*, 636 F.2d at 472, it is only necessary to show that the information was given under an express assurance of confidentiality or in circumstances in which such an assurance could reasonably be inferred. *Radowich v. United States Attorney*, 658 F.2d 957, 960 (4th Cir.1981) (citing *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977). In this case the Wood and Phillips affidavits state that there is an understanding of confidentiality underlying the FBI's exchange of information with cooperating law enforcement agencies and commercial institutions such as the ones involved here. Both the affidavits state that the FBI has been made aware that unless the confidentiality under which information is exchanged continues, the willingness of these entities to exchange essential information will be reconsidered. In a situation where confidentiality was not only implied, but assumed, the invocation of Exemption 7(D) is clearly proper. Id.

### III.

The Church questions the sufficiency of the Wood and Phillips affidavits, arguing that their assertions are not based upon personal knowledge of the facts in this case. *See* Fed.R.Civ.P. 56(e). Both Wood and Phillips state they are experienced FBI agents, familiar with FBI practice and procedure, and with the documents at issue. They are competent to testify to their own observations upon review of the documents, the procedural history of the Church's attempts to acquire information held by the FBI, the agency's practices and procedures during their own tenure, earlier practices of which they possess knowledge, and their own personal experience to the extent that it bears relevance to this case. *See Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C.Cir.1980). Although neither agent has stated he was present when informa-

tion was obtained from the confidential sources involved here, an express showing of confidentiality is not required, *cf. id.* at 1170 & n. 34, when there are other indicia of implied assurances of confidentiality, *accord id.* at 1174. Examination of copies of the redacted documents at issue here shows that the information withheld was of the type that would be disclosed within a confidential relationship and by sources requiring protection. The Church does not present evidence of agency bad faith or other reason to discount the affidavits, *cf. Weisberg v. Department of Justice*, 627 F.2d 365, 368–70 (D.C.Cir.1980); therefore discovery concerning the underlying bases for the conclusions expressed in the affidavits is unnecessary. *Military Audit Project v. Casey*, 656 F.2d 724, 751–52 (D.C.Cir.1981). According the affidavits "substantial weight," *e.g., Ray v. Turner*, 587 F.2d at 1191, and weighing the additional indicia of confidentiality, the Court holds that the sources involved were "confidential sources," the identities of which are protected under Exemption 7(D).

■ The FBI invokes the second clause of Exemption 7(D) to withhold confidential *information* furnished only by confidential sources in the course of its criminal investigation of the Church. The Church's argument that these records were not "compiled by a criminal law enforcement authority in the course of a criminal investigation" is contradicted by the assertions of both the Wood and Phillips affidavits. Additionally, the contents of the documents for which this subsection of Exemption 7(D) is invoked themselves suggest that the FBI should pursue investigation of possible criminal activity by the Church, or that it was doing so.[2] Because the Church raises no substantial question as to the affidavits' reliability, *see Military Audit Project v. Casey*, 656 F.2d at 750–52, they are, in conjunction with examination of the documents themselves, a sufficient basis to sup-

2. *See e.g.,* Documents A–60, A–82, and B–34 (suggesting that the FBI investigate the Church's activities) and Documents A–18, A–193, B–8, E–2, F–3, I–1, I–2, and I–5 (indicating that the FBI considered or conducted investigation of the Church). In this situation, even if Special Agents Wood and Phillips were not personally

involved in any criminal investigation of the Church, their observations and statements, based upon review of the documents and their knowledge of FBI practice and procedure in criminal investigations, is relevant and admissible for the purpose of determining whether the

port the FBI's withholding of information furnished by confidential sources under Exemption 7(D). *See Pratt v. Webster*, 673 F.2d at 424 n. 39 (citing *Radowich v. United States Attorney*, 658 F.2d at 964).

## IV.

■ Under Exemption 2, an agency is not required to disclose matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). In *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C.Cir.1981), the Court of Appeals for this Circuit held that Exemption 2 exempts from mandatory disclosure material which meets the test of "predominant internality" if disclosure significantly risks circumvention of agency regulations or statutes. *Id.* at 1074. Upholding the use of the exemption to withhold the symbols used to refer to FBI informants in· FBI documents, the Court in *Lesar v. United States Department of Justice*, 636 F.2d at 485, found the exemption applicable to "'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest." *Id. See also Nix v. United States*, 572 F.2d 998, 1005 (4th Cir.1978) (FBI routing stamps, cover letters, and secretary initials within the ambit of Exemption 2); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977) (FBI's administrative and mail routing stamps held within Exemption 2).

In this case, the FBI has invoked Exemption 2 to withhold two lines of one page of Document A–13, an airgram dated April 17, 1951. The information deleted is described by the Wood and Phillips affidavits as "instructions regarding the sensitive administrative handling of the document." Since the information withheld is instruction regarding agency practice and procedure, it clearly meets the test of "predominant internality," *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d at 1067 n. 44. Given that the Wood and Phillips affidavits state that the information is sensitive, it is also true that public disclosure of the information would risk circumvention

of federal statutes, *id.* at 1066, or could impede the effective operation of the FBI, *id.* at 1075, whole purpose it is to investigate and enforce federal law. *Cf. Allen v. CIA*, 636 F.2d 1287, 1289–90 (D.C.Cir.1980) (filing and routing instructions not exempt from disclosure under Exemption 2). Upon evaluation of the "critical considerations" under Exemption 2, *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d at 1073, the Court holds that the FBI's use of the exemption to withhold information from Document A–13 was proper in this case.

An Order consistent with this Memorandum follows.

## ORDER

Upon consideration of plaintiff's motion for summary judgment, defendants' motion for summary judgment, oral argument of counsel and the entire record, it is by the Court this 3rd day of November 1982

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that plaintiff's motion for summary judgment is denied.

documents were generated "in the course of a          criminal investigation."