The FOUNDING CHURCH OF SCIEN-
TOLOGY OF WASHINGTON, D.C.,
INC., Appellant,

v.

William French SMITH, Attorney Gener-
al of the United States, et al.

No. 83-1049.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1983.

Decided Nov. 18, 1983.

Robert A. Seefried, Washington, D.C., for
appellant.

Nathan Dodell, Asst. U.S. Atty., Wash-
ington, D.C., with whom Stanley S. Harris,
U.S. Atty., Royce C. Lamberth, R. Craig
Lawrence, Michael J. Ryan, Asst. U.S. At-
tys., and Robert M. Burnham, Atty., F.B.I.,
were on the brief, for appellees.

Before EDWARDS and GINSBURG, Cir-
cuit Judges, and McGOWAN, Senior Circuit
Judge.

Opinion for the Court PER CURIAM.

PER CURIAM:

Plaintiff Founding Church of Scientology
appeals the District Court's grant of sum-
mary judgment upholding a refusal by the
Federal Bureau of Investigation (FBI) to
disclose certain document portions under
the Freedom of Information Act (FOIA), 5
U.S.C. § 552 (1982). The issue on appeal is
whether the FBI properly invoked FOIA
exemption 7(D) with respect to certain doc-
uments, and exemption 2 with respect to
another. *Id.* § 552(b)(2), (7)(D). For the
reasons set forth in its opinion, we affirm

the District Court with respect to those document portions withheld under exemption 7(D).[1] Because of an asserted conflict in our precedents, however, we find it necessary to address the proper scope of exemption 2 in greater detail. We conclude by affirming the result reached by the District Court that exemption 2 does shield the remaining document portions from disclosure under FOIA.

The facts and procedural posture of this case are adequately summarized in the District Court's opinion. *Founding Church of Scientology of Washington, D.C., Inc. v. Levi,* 579 F.Supp. 1060, at 1061–62 (D.D.C. 1982). We therefore focus our attention on the one document whose disposition remains in doubt. That document consists of an airgram transmitted by the American legal attaché in Havana, Cuba, to FBI headquarters on April 17, 1951. The airgram requests information on Scientology founder L. Ronald Hubbard. The FBI disclosed to plaintiff the full contents of the legal attaché's message, but deleted certain notations at the top and bottom of the page "to protect sensitive administrative instructions for the handling of the document." *See* Joint Appendix at 31, 176. The Bureau asserts FOIA exemption 2 as the basis for nondisclosure, explaining that

> the material withheld [is] of an administrative nature and totally unrelated to the subject of plaintiff's request. The negligible value of such routine internal administrative material to the plaintiff, when weighed against the material's comparative sensitivity, called for a withholding of the material.

*Id.* at 20 (Affidavit of FBI Special Agent Martin Wood).

At oral argument, government counsel conceded that the type of material deleted is indistinguishable from the filing and routing instructions that we held unprotect-

ed under FOIA Exemption 2 in *Allen v. CIA,* 636 F.2d 1287, 1289–91 (D.C.Cir.1980). Nonetheless, counsel asserted that the *Allen* holding conflicts with our earlier ruling in *Lesar v. United States Department of Justice,* 636 F.2d 472, 485–86 (D.C.Cir.1980). In *Lesar,* we held that exemption 2 protects from disclosure informant codes contained in FBI documents. Furthermore, in footnote 77 of that opinion, we cited with approval decisions from two other circuits in which administrative handling instructions identical to those in *Allen* were found to fall within the scope of exemption 2. That footnote read:

> *See, e.g., Nix v. United States,* 572 F.2d 998, 1005 (4th Cir.1978) (FBI routing stamps, cover letters, and secretary initials within ambit of Exemption 2); *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977) (FBI's "administrative and mail routing stamps, and references to previous communications utilized to maintain control of an investigation" within ambit of Exemption 2).

*Id.* at 486 n. 77.

The conflict between our decisions in *Allen* and *Lesar* is apparent. The government contends, however, that because *Allen* relied on *Jordan v. United States Department of Justice,* 591 F.2d 753 (D.C.Cir.1978) (en banc), it has effectively been overruled by our subsequent decision in *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (en banc).

■ We agree. Exemption 2 provides that requested materials may be withheld if they relate "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2) (1982). In *Jordan,* we construed this language narrowly to cover only minor employment-related matters such as pay, pensions, vacations, hours of work, lunch hours, and parking. 591 F.2d at 763. Our holding in *Allen* relied on this limiting con-

---

1. In considering the document portions withheld under exemption 7(D), the District Court properly adhered to the threshold test enunciated in *Pratt v. Webster,* 673 F.2d 408, 413–21 (D.C.Cir.1982). Although the government seeks affirmance of the District Court's deci-

sion, appellees' counsel has urged us to reconsider certain aspects of our holding in *Pratt.* We decline that invitation and reaffirm that *Pratt* is the law of this circuit insofar as it interprets the threshold requirement of exemption 7.

struction to find that filing and routing instructions do not fall within the ambit of exemption 2 because they do not relate to terms or conditions of agency employment. 636 F.2d at 1289–91 (citing *Jordan,* 591 F.2d at 764). Subsequently in *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* however, we repudiated the narrow construction of exemption 2 that we had adopted in *Jordan,*[2] and specifically suggested that the effect of our ruling was to undercut that portion of the *Allen* decision that had relied on *Jordan.* See 670 F.2d at 1069 n. 48, 1073. We hold therefore that to the extent *Allen*

conflicts with our subsequent *en banc* decision in *Crooker,* it no longer represents the law of this circuit.

The only remaining difficulty arises from the implication in *Crooker* that administrative handling instructions, although within the broader reading of exemption 2, must be shown to threaten circumvention of agency regulation upon disclosure before withholding can be approved under the exemption. *See id.* at 1069 n. 48.[3] It is conceivable that this implication may be overbroad in light of Supreme Court precedent and the legislative history.[4]

**2.** Our precise words were:

Although the majority opinion in *Jordan* stated that the language of Exemption 2 "would seem to refer to those rules and practices that concern relations among the employees of an agency," 591 F.2d at 763, and that "personnel" "normally connote[s] matters relating to pay, pension, vacations, hours of work, lunch hours, parking, etc.," *id.,* we feel that the meaning of Exemption 2 is not so limited.

*Crooker,* 670 F.2d at 1073. *See also Jordan,* 591 F.2d at 782 (Leventhal, J., concurring in result) ("Exemption 2 applies ... to the internal personnel rules and to the internal practices of an agency." (emphasis deleted)).

**3.** The *Crooker* court noted the following language from the *Allen* opinion: "It is even doubtful that the filing and routing instructions would be exempt under the broader reading of the exemption given in the House report [because disclosure] would not cause such 'circumvention of agency regulations.'" *Allen,* 636 F.2d at 1290 n. 20 (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 364, 96 S.Ct. 1592, 1600, 48 L.Ed.2d 11 (1976)), *cited in Crooker,* 670 F.2d at 1069 n. 48.

**4.** After comparing the House and Senate reports, the Supreme Court in *Department of Air Force v. Rose* suggested that a bifurcated analysis may be called for in exemption 2 cases. The Court stated:

In sum, we think that, at least where the situation is not one where disclosure may risk circumvention of agency regulation, Exemption 2 is not applicable to matters subject to such a genuine and significant public interest.... Rather, the general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest.

425 U.S. at 369–70, 96 S.Ct. at 1603. The Court appeared to distinguish between matters

of genuine public interest and those involving trivial administrative details, and implied that only the former would be subject to a showing of possible regulatory circumvention upon disclosure before falling under exemption 2. *See also id.* at 364, 96 S.Ct. at 1600. Nowhere in the Court's opinion, the legislative history, or the statute's language, however, is there any hint that trivial administrative details must also satisfy this showing in order to fall within the exemption's protective ambit.

The language of *Rose* and a review of our own precedents suggests that the following approach to exemption 2 cases may therefore be appropriate. First, the material withheld should fall within the terms of the statutory language as a personnel rule or internal practice of the agency. *See supra* note 2 and accompanying text. Then, if the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute. *See, e.g., Nix,* 572 F.2d at 1005; *Maroscia,* 569 F.2d at 1002. If withholding frustrates legitimate public interest, however, the material should be released unless the government can show that disclosure would risk circumvention of lawful agency regulation. *See Rose,* 425 U.S. at 364, 369–70, 96 S.Ct. at 1600–03. *See also Jordan,* 591 F.2d at 783 (Leventhal, J., concurring in result), *cited in Crooker,* 670 F.2d at 1057.

This approach suggests that nondisclosure may have been appropriate in the *Allen* case because the filing and routing instructions there were found to be "trivial." 636 F.2d at 1290 n. 21. This is not to imply that all administrative handling instructions are *per se* routine internal matters of no genuine public interest. They certainly may be more significant in some cases. *Cf. generally* 1 J. O'REILLY, FEDERAL INFORMATION DISCLOSURE ¶ 12.04, at 12–11 (1983). Moreover, given the presumption favoring disclosure expressed in FOIA, *Rose,* 425 U.S. at 360–62, 96 S.Ct. at 1598–99, a reasonably low threshold should be maintained for determining when withheld administrative material relates

Nevertheless, we need not reach that issue because the record in the present case satisfies even the more rigorous standard applied in *Crooker*. In its opinion, the District Court found that "public disclosure of the information would risk circumvention of federal statutes." *Founding Church of Scientology*, 579 F.Supp. 1060 at 1065 (citation omitted). Plaintiff has not contested this finding on appeal, nor indeed did it dispute the FBI's evidence of sensitivity during the summary judgment proceedings in District Court.[5] *See* Brief for Appellant at 27–29; Plaintiff's Memorandum in Reply to Defendants' Motion for Summary Judgment at 11–12, *reprinted in* Joint Appendix at 138–39. We therefore have no hesitation in affirming the District Court's judgment that exemption 2 protects the administrative handling instructions at issue in this case from disclosure under FOIA.

*It is so ordered.*

---

to significant public interests, *see, e.g., id.* at 367–69, 96 S.Ct. at 1602–03. *See also Jordan,* 591 F.2d at 784 (Leventhal, J., concurring in result).

5. *Cf. Franz Chem. Corp. v. Philadelphia Quartz Co.,* 594 F.2d 146, 150 (5th Cir.1979) ("Where the moving papers do not reveal the presence of a factual controversy and the opposing party manifests silent assent through inaction, the opposing party will not thereafter on appeal be heard to belatedly assert as grounds for reversal that some factual disputes implicit in the underlying arguments have yet to be resolved.").