Alan L. FITZGIBBON, Plaintiff,

v.

U.S. SECRET SERVICE, et al., Defendants.

Civ. A. No. 86–1886 (HHG).

United States District Court, District of Columbia.

Sept. 14, 1990.

---

James H. Lesar, Washington, D.C., for plaintiff.

Philip J. Lindenmuth, Atty.–Advisor, Office of Information and Privacy, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is the third of three related actions brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, to obtain documents pertaining to the regime of Rafael Trujillo, head of state of the Dominican Republic until 1961. The instant action seeks information from the U.S. Secret Service and the Federal Bureau of Investigation regarding an alleged plot by agents of the Trujillo regime to assassinate then President Kennedy or kidnap his daughter Caroline.

## I

Plaintiff is an historian researching alleged plots by the Trujillo regime in the United States. In the first two actions, he sought information from the Department of State and the Central Intelligence Agency ("CIA") related to the disappearance in 1986 of Jesus de Galindez, a Basque exile and critic of the Trujillo regime. Following an *in camera* review of CIA documents, this Court ordered the release of some documents and the withholding of others. *Fitzgibbon v. CIA,* 578 F.Supp. 704 (D.D.C. 1983). Both parties appealed, but the case was subsequently remanded for reconsideration in light of the Supreme Court's decision in *CIA v. Sims,* 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). This Court reversed major portions of its prior disclosure order, but it continued to require disclosure of a small number of documents. *See* Memorandum of May 19, 1989. Both parties again appealed, and the Court of Appeals affirmed in part and reversed in part, permitting defendants to withhold all ·of the documents at issue. *See Fitzgibbon v. CIA,* 911 F.2d 755 (D.C.Cir.1990).

The instant action began some five years ago when the plaintiff filed a FOIA request with the Secret Service for all documents pertaining to George Waldemar Mallen Jimenez (Mallen), Rafael Anselmo Rodriguez Molins (Molins), and an alleged plot to assassinate then President Kennedy or kidnap his daughter Caroline Kennedy. A second request sought photographs of Mallen and Molins. The Secret Service and the FBI, which had possession of a number of the documents sought, released some and withheld others pursuant to various FOIA exemptions. Plaintiff then brought the instant action seeking to compel disclosure of the withheld materials. Presently pending before the Court are defendant's motion for summary judgment and plaintiff's motion for an *in camera* inspection and to compel a further search.

## II

■ Plaintiff first contends that the Secret Service should be required to conduct further searches to attempt to locate other documents responsive to his FOIA request. He asserts that further searches are warranted because the Secret Service did not describe the search it undertook and did not search its Chicago, New York, Miami and Washington, D.C. field offices, and that the paucity of material produced indicates that other responsive documents exist. These claims lack merit.

Affidavits submitted by the Secret Service attest to the fact it hand-searched its Criminal Records Section and otherwise searched its Intelligence Division and its Public Affairs division, the most likely locations for responsive files. *See* Phillips Declaration (Criminal Records Section); McCann Declaration (Intelligence Division), and Merletti Declaration (Public Affairs Division). No field offices were searched because field office investigation reports are routinely submitted to the Intelligence Division, and because field offices maintain closed files only for five years, at which time the files are sent to the Criminal Records Section. At the time of the search, the events underlying plaintiff's FOIA request were approximately twenty years old. It is therefore extremely unlikely that any responsive documents would still be in the field offices.

Even if the plaintiff were correct about the paucity of documents produced (and he is not, for defendants have turned over a substantial number of documents)—that alone would be of no legal consequence. The issue is not whether the agencies' searches uncovered responsive documents, but rather whether they were reasonable. *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986). Nothing proffered by plaintiff indicates that the searches were unreasonable. Even if some responsive documents have not been produced, no search for documents that are two decades old will be totally free from error. *See Meeropol v. Meese,* 790 F.2d at 943. Furthermore, the FOIA requires agencies to disclose only those records in existence at the time the request is made. "The fact that a document once existed does not mean that it now exists; nor does the fact that any agency created a document necessarily imply that the agency has retained

it." *Miller v. Department of State*, 779 F.2d 1378, 1385 (8th Cir.1985). Thus, the fact that the plaintiff received fewer documents than he anticipated may suggest that the documents never existed; that they existed, but were somehow destroyed or lost; or that they still exist but were overlooked. However, that fact does not demonstrate that the search was unreasonable.

## III

The Secret Service and FBI rely on a number of FOIA exemptions in withholding documents in part or in their entirety. Each exemption will be addressed separately.

### A. Exemption (b)(1): Classified Information

FOIA Exemption (b)(1) permits an agency to withhold materials that are:

Specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (b) are, in fact, properly classified pursuant to such executive order.

5 U.S.C. § 552(b)(1). Pursuant to this exemption, the FBI has withheld two documents. The first is an FBI memorandum dated January 30, 1967 concerning an investigation of Molins. The FBI asserts that the information, which has been classified "confidential," came from an intelligence activity and that its disclosure would reveal the existence of a particular intelligence operation, allow an assessment of its areas or targets, and disclose the identity of an intelligence source. *See* Declaration of Special Agent Sherry L. Davis ¶¶ 12–14. The second document is a one-page FBI memorandum dated January 31, 1967 concerning an investigation of Mallen. Information in two paragraphs was designated "secret" and was given to the United States by a foreign government with the expectation that its source and substance would remain confidential. *Id.* at ¶¶ 15–18.

Disclosure would reveal the existence of a secret working relationship between the United States and a foreign government. *Id.* at 18.[1]

The affidavits in support of an Exemption One claim must describe the withheld information and the justification for withholding with reasonable specificity. *Abbotts v. NRC*, 766 F.2d 604, 607 (D.C.Cir. 1985). The affidavits here describe the subject of the memoranda, the approximate source of the information contained therein, and the harm likely to result from disclosure. They provide "a logical connection between the information and the claimed exemption." *Abbotts*, 766 F.2d at 607, *quoting Salisbury v. United States*, 690 F.2d 966, 970 (D.C.Cir.1982).

Plaintiff maintains that the FBI has failed to specify the harm that disclosure would cause to the individuals and operations mentioned in the documents. Opp. at 7. The Court of Appeals for this Circuit rejected a virtually identical argument in *Military Audit Project v. Casey*, 656 F.2d 724, 740–41 (D.C.Cir.1981). In that case, plaintiffs sought the names of corporations that had cooperated or contracted with the CIA, arguing that the CIA had failed to demonstrate that disclosure would harm these companies, particularly since several of the companies' involvement with the CIA was already a matter of public record. The Court of Appeals, however, concluded that the extent of the actual injury to the companies "is not critical" since the CIA had alleged that disclosure would discourage other companies from assisting it in the future. *Id.* at 741.

In the instant action, the FBI makes the similar and wholly plausible assertion that disclosure of the identity of the foreign government here would effectively discourage other foreign governments from providing information to the United States. It belabors the obvious to assert that many intelligence sources need or at least want anonymity, and that any intelligence agency unable to guarantee it will quickly dis-

---

1. Plaintiff suggests that an *in camera* review be held to deal with the two documents at issue under this rubric. For the reasons developed *infra,* such a review is not necessary or appropriate.

cover that its well of information has dried up.

Plaintiff's arguments to the contrary are tantamount to a claim that, in order to pass muster, the affidavits must be so specific as to cause the very harm that the exemption was intended to avoid. That is obviously not appropriate. It is the nature of the FOIA's national security exemption that affidavits setting forth the reasons for claiming it are necessarily somewhat vaguer than those in support of claims for other exemptions. *Cf. Abbotts*, 766 F.2d at 606 (agency affidavits concerning classified status of documents in a FOIA review entitled to substantial weight).

■ Plaintiff's relies on *King v. Department of Justice*, 830 F.2d 210 (D.C.Cir. 1987), to support his claim that the *Vaughn* index prepared by the FBI is inadequate. The *King* decision, however, expressly turns on the unusual *Vaughn* index prepared by the FBI in that case. 830 F.2d at 219–25. The *Vaughn* index in *King* was a "coded" index which did not individually describe the requested documents but rather consisted of redacted copies of the withheld documents that were annotated by codes. *King*, 830 F.2d at 219. These codes were, in turn, explained in a code catalogue. In the instant case, defendants have not only not provided a "coded" *Vaughn* index, but they have supplied a description of, and justification for each document—which is exactly what the *King* decision indicated the FBI ought to do.

■ Plaintiff maintains next that because the documents at issue are more than twenty years old, the information could not possibly involve legitimate national security interests. While this Court initially accepted this argument, *Fitzgibbon v. CIA*, 578 F.Supp. 704 (D.D.C.1983), three considerations have led it to conclude otherwise. First, the *Fitzgibbon* case was decided under Executive Order No. 12065 which created a presumption in favor of disclosure for documents more than twenty years old. *Id.* at 721. No similar presumption exists under the Executive Order 12356, the one at issue in this case. Second, the FBI already has considered the

age of the documents in its determinations. Davis Dec. ¶ 8. Thus, any general theory as to the impact of the passage of time must be rejected where the CIA made specific findings as to the impact of the passage of time *on these documents*. Third, the Court of Appeals decision in *Fitzgibbon*, at 763–64, rejected a similar passage-of-time argument in connection with Exemption Three. While Exemption Three in the context of 50 U.S.C. § 403g is arguably broader than Exemption One, *Fitzgibbon*, at 766–67, the difference is not so great that the policy reasons given in *Sims* for the protection of CIA sources should not apply in this case.

B. *Exemption (b)(2): Internal Rules and Practices*

■ FOIA exempts from disclosure material "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Withheld pursuant to this exemption are:

(1) pages bearing Secret Service administrative markings, numbers which classify information based on a Secret Service data collection system. Sheafe Declaration at ¶ 18. The numbers are used to index, store, locate, retrieve, and identify information.

(2) a number of Secret Service forms including one entitled "Administrative Profile."

(3) temporary source numbers which the FBI uses in lieu of names to identify informants. The symbols are included in reports forwarded to other law enforcement agencies.

Exemption Two does not provide a basis for withholding Secret Service identification markings and numbers. This exemption does not shield information on the sole basis that it is designed for internal agency use. *See Schwaner v. Department of Air Force*, 898 F.2d 793, 794, 796 (D.C.Cir. 1990). The *Schwaner* decision teaches that in order to qualify for this exemption, the document must not only be internal, but also relate to an agency rule or practice. *Id.* at 794–98. The only agency rule or practice at issue here is the practice of

collecting information, and *Schwaner* expressly rejected that as a basis for claiming the exemption. *Id.* at 795–798.

The Secret Service maintains, without explanation, that disclosure of the markings "might compromise the integrity of our recordkeeping system." Sheafe Aff. ¶ 18. However, the Service cites no authority for the proposition that this by itself is a proper basis to withhold documents, and this Court can find none.

Neither the Sheafe affidavit, nor any of defendants' other filings indicates that the markings at issue could be used to circumvent a statute or regulation, *see Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (Exemption Two applies to attempts to circumvent agency regulation or statute); *Founding Church of Scientology v. Smith,* 721 F.2d 828 (D.C.Cir.1983) (same); *NTEU v. Customs Service,* 802 F.2d 525 (D.C.Cir.1986), and the Secret Service has failed even to suggest any other reason or need to keep secret the procedure for the routine for handling of documents.

In *Lesar v. Department of Justice,* 636 F.2d 472 (D.C.Cir.1980), the Court of Appeals for this Circuit permitted the withholding of informant codes, the disclosure of which might permit identification of the informant. Similarly, in *Founding Church of Scientology v. Smith,* 721 F.2d 828 (D.C. Cir.1983), it allowed withholding of handling and routing instructions, the disclosure of which would have led to the circumvention of federal statutes. The *Schwaner* court explained those decisions saying

> Judicial willingness to sanction a weak relation to "rules and practices" may be greatest when the asserted government interest is relatively weighty.

898 F.2d at 796. No such interest is at stake here; agencies have no generalized interest in keeping secret the method by which they store records. Indeed, the presumption in favor of disclosure in the FOIA demonstrates the opposite.

■ The temporary source symbols, however, may be withheld under Exemption Two, as the court held in *Lesar v. Dept. of Justice,* 636 F.2d 472 (D.C.Cir.

1980). Plaintiff's claim that *Crooker* implicitly overturned *Lesar* is without foundation. There also is no merit to plaintiff's related assertion that disclosure to the public of the source symbols does not pose a risk of identification of the source because the symbols already are distributed to law enforcement agencies. It cannot reasonably be maintained that dissemination of these codes to law enforcement poses the same risks as dissemination to the public.

■ The Secret Service also has withheld a number of agency forms including one entitled "Administrative Profile." Sheafe Affidavit at ¶ 29. Defendants have not explained the contents, the use and purpose, or anything else about these forms. Accordingly, this Court will have to examine them *in camera* to determine whether they meet the requirements for withholding under Exemption Two, and the Secret Service shall produce them to the Court for that purpose within twenty days hereof.

### C. *Exemption (b)(5): Deliberative Process*

Citing Exemption Five, the Secret Service withheld reports by field agents regarding investigations that they conducted of Mallen and Molins. The apparent purpose of the reports was to determine whether a threat had been posed to the Kennedy family. These reports contain recommendations and opinions, and they were sent to supervisors in the Intelligence Division who would use them to make determinations as to what action should be taken to protect the family. Field agents did not have authority to make decisions concerning any actions to be taken regarding Mallen and Molins.

■ Two prerequisites must be met for application of the deliberative process privilege. First, the communication must be predecisional, *Jordon v. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc), and second, it must be a direct part of the deliberative process in that it makes recommendations or expresses opinions. *Vaughn v. Rosen,* 523 F.2d 1136, 1143–44 (D.C.Cir.1975). Documents encom-

passed by the privilege include "recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 141, 95 S.Ct. 1504, 1512, 44 L.Ed.2d 29 (1975). A document "from a subordinate to a superior official is more likely to be predecisional." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C. Cir.1980).

■■■ Applying these rules to the instant case, it is clear that the information falls squarely within the deliberative process exemption. It consists of opinions and evaluative comments of agents concerning matters within the statutory mission of the Secret Service. The memoranda containing the opinions and comments were communicated from field agents to supervisors with whom decision-making authority rested and who used these memoranda to make decisions.

The rationale for nondisclosure—that agents will be more cautious in their opinions if they have to be concerned that the reports will be made public—comports precisely the policy underlying the exemption: namely, the encouragement of frank discussions between subordinates and supervisors as to possible agency actions. *Coastal States*, 617 F.2d at 866.

■■■ Plaintiff's contention that the withheld information delineates the basis for final decisions is groundless. His claim that the recommendations at issue must be routinely approved because they are tied to an investigation is sheer speculation. Even if this were true, the privilege is not lost merely because the decision has been approved:

> [O]nly the express adoption in a nonexempt memorandum explaining a final decision will serve to strip these memoranda of their predecisional character. If the agency merely carried out the recommended decision without explaining its decision in writing, we could not be sure that the memoranda accurately reflected the decision-maker's thing.

*Afshar v. Department of State*, 702 F.2d 1125, 1143 n. 22 (D.C.Cir.1983); *see also,*

*Ahearn v. Army Materials & Mechanics Research Center*, 580 F.Supp. 1405, 1407 (D.Mass.1984) (where court could not conclude that supervisor agreed with opinions, conclusions, and recommendations of a report because record merely showed that supervisor approved report and reached same result, report held predecisional); *AFGE v. Department of Army*, 441 F.Supp. 1308, 1311 (D.D.C.1977) (no basis for concluding that Commander's approval of report represented an adoption of opinions and reasoning contained in report). The fact that the words "approved," "closed," or "cleared" appear on the document is not dispositive for the same reasons.

Plaintiff's contention that Exemption Five is strictly limited to policy and rulemaking decisions is unsupported by case law, and opinions discussing it have never so limited it. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 141, 95 S.Ct. at 1512.

■■■ These conclusions dispose of all the documents sought with respect to which Exemption Five has been asserted, but one. Document 39 is a letter from a Secret Service official to the United States Attorney in Chicago relating to a meeting in which that official informed the U.S. Attorney of the Mallen–Molins investigation. The document is inter-agency, and there is no discussion of any future action or decision. The predecisional exemption is, therefore, inapplicable.

D. *Exemption (b)(6): Personnel or Medical Files*

■■■ Pursuant to the Exemption Six, the FBI has withheld three classes of information: (1) rap sheets; (2) information from the passport records including travel plans, addresses, whom to notify in case of death, and Social Security numbers; and (3) other personal information regarding medical histories, family and domestic matters and future plans. Plaintiff challenges only the FBI's withholding of the rap sheets. The Supreme Court has held that rap sheets may be withheld under Exemption Seven, *see infra*, and there is therefore no need to

consider whether those documents may also be withheld under other exemptions. Since plaintiff does not challenge the withholding of the other documents, the Court will treat these matters as conceded.

### E. *Exemption 7(C): Invasion of Privacy*

The FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Defendants have invoked exemption 7(C) to withhold

(1) rap sheets;

(2) the identities of, and personal data concerning, third parties of investigative interest in the Secret Service and FBI;

(3) the identities of individuals who are not the subject of an FBI investigation but are who are mentioned in these records;

(4) the identities of Secret Service and FBI agents and other federal and law enforcement personnel; and

(5) the identities of those who have furnished information to the FBI, including employees of credit, commercial and financial institution.

 Application of Exemption 7(C) requires a balancing of the harm to the individual whose privacy has been breached against the public interest that would be served by disclosure. *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 587 (D.C.Cir.1987). The Supreme Court, for example, has recently held that "rap sheets" are exempt from disclosure because the subject of the rap sheet has a strong privacy interest in preventing disclosure, while disclosure would do nothing to "ensure that the *Government's* activities be opened to the sharp eye of public scrutiny." *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, ——, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989) (emphasis in original).

 Likewise, there is a strong privacy interest militating against the disclosure of the identities of persons of investigatory interest to the Secret Service, *Senate of Puerto Rico*, 823 F.2d at 588; *Fund for Constitutional Gov't v. National Archives*, 656 F.2d 856, 863 (D.C.Cir.1981); *Baez v. Department of Justice*, 647 F.2d 1328, 1338 (D.C.Cir.1980), and of innocent third parties mentioned in law enforcement reports. *Fitzgibbon*, 911 F.2d 755, 766–67. Similarly, law enforcement personnel have a strong interest because of the potential for harassment. *Kirk v. Department of Justice*, 704 F.Supp. 288 (D.D.C.1989); *Stone v. FBI*, 727 F.Supp. 662 (D.D.C. 1990); *Housley v. Department of Treasury*, 697 F.Supp. 3 (D.D.C.1988).

 Plaintiff expressly states that his interest is in the activities of the Trujillo regime in the United States as opposed to those of the United States Government. He seeks FBI and Secret Service records because they may shed light on a plot by agents of the Trujillo regime.

This is not a public interest within "the basic purpose of [the FOIA] to open agency action to the light of public scrutiny." *Reporters Committee*, 109 S.Ct. at 1481. Thus, the balance between public interest and privacy clearly tilts in favor of the latter. *See also, National Association of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989).

### F. *Exemption 7(D): Informants' Identities*

Pursuant to Exemption 7(D), the FBI and the Secret Service have withheld information that might identify confidential sources or that was provided by such sources under an express or implied assurance of confidentiality, including identities of, and information provided by state and local law enforcement as well as commercial, credit and financial institutions. Sheafe Affidavit ¶¶ 24–26; Cook Declaration ¶ 7.

 It is well-settled that Exemption 7(D) applies not only to private citizens but also to non-federal entities such as law enforcement agencies as well as to commercial, credit and financial institutions.

*Shaw v. FBI,* 749 F.2d 58, 62 (D.C.Cir. 1984); *Weisberg v. Department of Justice,* 745 F.2d 1476, 1492 (D.C.Cir.1984); *Baez,* 647 F.2d at 1340; *Lesar,* 636 F.2d at 491. Exemption 7(D) applies to both express and implied promises of confidentiality. *Keys v. Department of Justice,* 830 F.2d 337, 344–46 (D.C.Cir.1987). *See also, Brant Const. Co. v. EPA,* 778 F.2d 1258, 1263 (7th Cir.1985); *Diamond v. FBI,* 707 F.2d 75, 78 (2d Cir.1983).

■ Plaintiff asserts that the claim to Exemption 7(D) is weakened by the fact that he allegedly knows the identities of several of the sources and that those sources have spoken to him. However, speculation by the plaintiff as to the identity of sources does not affect a claim to the exemption. *Shaw v. FBI,* 749 F.2d 58, 62 (D.C.Cir.1984) (even if speculations as to identity of source were correct, FBI not foreclosed from protecting source's identity where identity is not acknowledged by the agency); *Lesar,* 636 F.2d at 491 (that identities of sources public in some contexts does not foreclose government from protecting sources' identities in other contexts); *Greene v. Huff,* No. 86–345, slip op. at 4 (D.D.C. October 10, 1986) ("Plaintiff's speculation about the identity of confidential sources do not entitle him to breach the assurances of confidentiality protected through 7(D)'s exemption").

■ The protection goes beyond the need to protect the identities of the sources at issue here; there is also law enforcement's interest in assuring future sources that their identities will remain confidential. *See Shaw,* 749 F.2d at 64 ("The purpose of the confidential information exemption is to prevent the FOIA from causing the 'drying up' of sources of information in criminal investigations"). *Cf. Sims,* 471 U.S. at 175, 105 S.Ct. at 1891 ("To induce some sources to cooperate the Government must tender as absolute an assurance of confidentiality as it can"). For that reason, plaintiff's argument that the passage of time weakens the vitality of Exemption 7(D) fails. Indeed, that exact contention was rejected by the Court of Appeals for

this Circuit in *Keys v. Department of Justice,* 830 F.2d at 346.

G. *Exemption 7(E): Confidential Investigative Techniques*

■ Exemption 7(E) was cited to withhold information in FBI and Secret Service records that would reveal certain Secret Service and FBI investigative techniques. Sheafe Affidavit ¶¶ 27–28; Cooke Declaration 28(A). Both agencies assert that these techniques are not generally known to the public, and that the description of the techniques would disclose their substances thus negating their future effectiveness. *Id.* However, these claims are general and cursory at best, and the only way the Court can ascertain whether the assertions are correct is by way of an *in camera* review.

Accordingly it is this 13th day of September, 1990

ORDERED that the Secret Service forms including the "Administrative Profile" withheld pursuant to Exemption (2), and that Secret Service documents discussing confidential investigative techniques withheld pursuant to Exemption 7(E) shall be produced for *in camera* inspection within twenty days hereof; and it is further

ORDERED that Document 39 be turned over to plaintiff without the predecisional exemption redactions; and it is further

ORDERED that in all other respects plaintiff's claims are denied.