Mark A. ALLEN, Plaintiff,

v.

**DEPARTMENT OF DEFENSE, et al., Defendants.**

Civ. A. No. 81–2543.

United States District Court, District of Columbia.

Nov. 26, 1986.

Jame H. Lesar, Washington, D.C., for plaintiff.

Stephen E. Hart, Dept. of Justice, Steven R. Ross, U.S. House of Representatives, Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the court on cross motions for partial summary judgment by plaintiff and defendant Central Intelligence Agency ("CIA"), and on plain-tiff's Motion for Appointment of a Special Master or Historical Review Committee. For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

### I. *Background*

This Freedom of Information Act ("FOIA") case began some six years ago when plaintiff Mark Allen filed a FOIA request with the CIA, Defense Intelligence Agency, and others. Plaintiff is a researcher seeking information related to the assassination of President John F. Kennedy. Plaintiff's FOIA request was for "all correspondence or records of communications between your agency and the U.S. House Select Committee [on Assassination]'s investigation into the assassination of President John F. Kennedy."

The CIA's original contention that all materials requested were exempt from disclosure under FOIA as congressional, not agency, records was rejected by this court. *Allen v. Department of Defense*, 580 F.Supp. 74 (D.D.C.1983). The bulk of the documents which make up plaintiff's request, CIA files that preexisted the House Select Committee's investigation, were there held to be non-exempt as congressional documents. *Id.*

In the next stage of this lengthy litigation, plaintiff was ordered to designate 350 documents from among the 5,000 that the CIA had finished processing, and the CIA was ordered to create a *Vaughn* index for those 350 documents. *Allen v. Dep't of Defense*, No. 81–2543, Order (D.D.C. Apr. 2, 1986). *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). Plaintiff and defendant have each moved for partial summary judgment based on the *Vaughn* index and accompanying affidavits filed by defendant the CIA.

### II. *Summary Judgment and the FOIA*

Some general principles are relevant to the court's review of defendant's *Vaughn* index and the cross motions based upon it. First, *Vaughn v. Rosen* makes clear that the agency bears the burden of establishing that the material at issue fits within a claimed FOIA exemption. 484 F.2d 820.

The court, in considering defendant's claimed exemptions, must undertake a *de novo* review, 5 U.S.C. § 552(a)(4)(B), but in so doing must accord substantial weight to agency affidavits. *See Hayden v. National Security Agency*, 608 F.2d 1381, 1984 (D.C.Cir.1979); *Ray v. Turner*, 587 F.2d 1187, 1193–4 (D.C.Cir.1978). It is also clear that an agency may meet its burden under the FOIA by affidavits or declarations, and that:

> ... if the affidavits contain information of reasonable detail, sufficient to place the documents within the exemption category, and if the information is not challenged by contrary evidence in the record or evidence of agency bad faith, then summary judgment for the Government is appropriate without an *in camera* review of the documents.

*Lesar v. U.S. Department of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980). *See also Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir.1986). With these principles in mind, consideration of the particular exemptions at issue is now possible.

### III. *The FOIA Exemptions Claimed*

The CIA relies principally on four FOIA exemptions in withholding documents in part and in their entirety. Each category of exemption will be addressed separately.

### A. *Exemption (b)(1): National Defense or Foreign Policy:*

FOIA Exemption (b)(1) permits an agency to withhold materials that are:

> (A) Specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy; and (B) are, in fact, properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). Pursuant to this exemption, the CIA has withheld many of the documents that plaintiff requested. The CIA has submitted the Declaration of Louis J. Dube in support of its claimed exemptions. Mr. Dube is an Information Review Officer for the Directorate of Operations, CIA, whose qualifications to review the records withheld in this case are not challenged by plaintiff. *See* Declaration of Louis J. Dube ("Declaration") ¶ 1, 9.

■ The U.S. Court of Appeals for the District of Columbia Circuit has held that "the Executive Order in effect at the time the classifying individual acted states the relevant criteria for purposes of determining whether Exemption 1 properly was invoked." *Meeropol v. Meese*, 790 F.2d 942, 959 (D.C.Cir.1986), *quoting Lesar v. Dep't of Justice*, 636 F.2d at 480. Mr. Dube, who has original classification authority at the TOP SECRET level, Declaration ¶ 9, reviewed the original classifications of the documents. He determined that the original classifications were proper, and in some instances determined that those documents not originally marked as classified should be so marked. *Id.* Mr. Dube conducted his final review under Executive Order 12356, 47 Fed.Reg. 14,874 (1982), which became effective on August 1, 1982. It is thus the criteria of that Executive Order which the court must apply in evaluating the propriety of the claimed exemptions that the CIA asserts. *Meeropol, supra,* 790 F.2d at 959; *Lesar, supra,* 636 F.2d at 480.

In claiming exemptions under FOIA (b)(1), the CIA relies on three provisions of Executive Order 12356 that make certain information classifiable if it, "by itself or in the context of other information, reasonably could be expected to cause damage to the national security." Executive Order 12356, § 1.3(b). The categories of information relied upon are:

> (a) Information concerning intelligence sources or intelligence methods (§ 1.3(a)(4)); and/or
>
> (b) Information concerning intelligence activities of the United States (§ 1.3(a)(4)); and/or
>
> (c) Foreign government information (§ 1.3(a)(3)).

In some instances, a document has been withheld based upon more than one exemption.

■ The Dube Declaration discusses these categories of information in some detail, explaining in general terms why it is necessary to the national security to with-

hold information that fits within these provisions. In addition, for each document for which the CIA claims a (b)(1) exemption based on Executive Order 12356, the Dube Declaration explains (to the extent possible without revealing the withheld information) how and why that document in particular is properly exempt under FOIA exemption (b)(1). This level of detail is sufficient for the court to perform its *de novo* review of defendant's exemption (b)(1) claims. *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979).

Much of the information that defendants have withheld is information relating to intelligence sources. Executive Order 12356 states that "[u]nauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods is presumed to cause damage to the national security." § 1.3(c). Defendants support this presumption that revelation of the identities of their intelligence sources, or of information leading to their identities, would cause damage to the national security, with several arguments. First, revelation of a source's identity could lead to embarrassment of or reprisals toward the source or his family or friends. Secrecy is thus a means of protecting existing intelligence sources. Declaration ¶ 14. Second, "individuals are understandably reluctant to cooperate with the CIA or with American intelligence unless they can be absolutely certain that the fact of their cooperation will forever remain secret." *Id.* Thus, the CIA's guarantee of secrecy serves as the *quid pro quo* for intelligence information that would otherwise be unobtainable. The CIA would find it difficult or impossible to recruit new intelligence sources absent such guarantees, made and then kept by the CIA. Third, the CIA points out that its adversaries could use the disclosure of a source's identity to their advantage, and to the detriment of the national security. The identity of an intelligence source could be a "tip-off" to "what areas the CIA is interested in and upon which it is focusing its resources." Declaration ¶ 16. For all these reasons, the CIA has determined that release of source iden-

tities, or of information which reasonably would or could be expected to lead to the identification of an intelligence source, would cause damage to the national security.

The U.S. Supreme Court, in *C.I.A. v. Sims*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985), upheld these reasons for withholding material, and spoke in emphatic terms of the "broad power" that the Director of the CIA has to determine what information is likely to lead to the disclosure of the identity of an intelligence source. *Id.* at 1888, 1890. While the *Sims* case was concerned with interpreting the language of the National Security Act of 1947, 50 U.S.C. § 403(d)(3), the relevant language in that Act is virtually identical to that in Executive Order 12356, "protecting intelligence sources and methods from unauthorized disclosure." *Compare* Executive Order 12356, 47 Fed.Reg. 14,874 (1982). In addition, in the instant case the CIA concomitantly relies on the National Security Act, 50 U.S.C. § 403(d)(3), and Executive Order 12356 in withholding most of the material sought by plaintiff. Thus the discussion and conclusions of the Supreme Court in *Sims* are clearly determinative of this case.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment focuses principally on defendant's FOIA (b)(1) exemption claims. Initially, plaintiff had contended that the reclassification of the withheld documents under Executive Order 12356 was procedurally improper, but conceded the propriety of the CIA's reclassification at oral argument. Accordingly, plaintiff's procedural challenge to defendant's FOIA (b)(1)/Executive Order 12356 exemption is no longer at issue.

Plaintiff objects to defendant's (b)(1) exemption claims on substantive grounds as well. Plaintiff claims that defendant's definition of "intelligence sources and methods" is too sweeping, in that it includes: (1) dead sources; (2) "potential," "possible," and "unwitting" sources; and (3) sources whom it is difficult or impossible to connect to withheld information. In addition, plaintiff contends, as a general matter, that the

passage of time necessarily erodes the protection that must be accorded to intelligence sources and methods in the interest of national security, and that most of the information that plaintiff seeks—20 to 25 years old—should therefore be released. *See* Plaintiff's Opposition at 6–10; Plaintiff's Motion for Partial Summary Judgment at 5–10.

Each of these contentions has, however, been addressed and rejected by the Supreme Court in *C.I.A. v. Sims*, 105 S.Ct. 1881 (1985). The *Sims* Court emphatically rejected any attempts by the courts to place limiting interpretations on the withholding statute at issue in both that case and the instant case, noting that "it is the responsibility of the Director of Central Intelligence, not the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence gathering process." *Sims*, 105 S.Ct. at 1894. The Court noted that the CIA necessarily uses "almost an infinite variety of diverse sources" in fulfilling its role, *id.* at 1888, and that "[e]ven a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to 'close up like a clam.' " *Id.* at 1891.

■ Plaintiff's objections to the breadth of protection that the CIA chooses to accord to its intelligence sources is thus inadequate to overcome the strong deference that the Supreme Court has said must be accorded to the agency's determinations in this area. That a source is dead does not mitigate the risk that other sources might be dissuaded from cooperating with the CIA if the dead source's identity is disclosed. As the Court observed, "to induce some sources to cooperate, the Government must tender as absolute an assurance of confidence as it possibly can." *Id.* at 1891. Similarly, that an individual is "unwittingly" cooperating with the CIA does not diminish his or her status as an "intelligence source" whose identity may properly be protected by the CIA. Any assertion to the contrary, the Court noted,

"ignores the reality of intelligence work, which often involves seemingly innocuous sources as well as unsuspecting individuals who provide valuable intelligence information." *Id.* at 1892. The value of a source's identity to adversaries is undiminished by the source's ignorance of his value to them or to the CIA. Nor would reluctant sources be reassured in the knowledge that an individual's identity was disclosed only because he or she was an "unwitting" source. The CIA must be permitted to protect all intelligence sources as absolutely as possible. These "unwitting" sources' identities may therefore properly be withheld given the presumption that revelation of their identities would harm national security, and the determination by the CIA that in the particular instances in question such harm is indeed likely.

■ Plaintiff's objection, in his Motion for Partial Summary Judgment, to the withholding of information that cannot be connected with a source, fails for related reasons. In giving wide deference to the CIA, the Court in *Sims* acknowledged that "bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.' " *Id.* at 1892, *quoting Halperin v. C.I.A.*, 629 F.2d 144, 150 (D.C.Cir.1980). Accordingly, the Court in *Sims* held that the CIA "has power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source." *Id.* at 1893. The calculation of whether such a connection might be made by an informed observer is to be performed not by the court but by the CIA, *id.* at 1894, and absent some showing of bad faith or contrary evidence, which has not been made here, the CIA's determination is to be respected. Accordingly, plaintiff's objections to the scope of the CIA's protection of its intelligence sources must be rejected.

■ Finally, plaintiff relies on the case of *Fitzgibbon v. C.I.A.*, 578 F.Supp. 704 (D.D.C.1983), for the proposition that the passage of time diminishes the need for secrecy as to the information that plaintiff

seeks. Plaintiff's proposition must be rejected for three reasons. First, the *Fitzgibbon* case upon which plaintiff relies was decided under a predecessor Executive Order, number 12065, which created a presumption in favor of disclosure for documents more than 20 years old. *Id.* at 721. No such presumption exists under the Executive Order at issue in this case. Second, and perhaps more importantly, the CIA has considered the age of the documents in its determinations. Thus any general theories as to the impact of the passage of time must be rejected as mere hypotheticals in contrast to the CIA's specific findings as to the impact of the passage of time *on these documents.*

Third, in *Sims,* the Supreme Court rejected a judicial limitation placed on the language of the CIA withholding statute, 50 U.S.C. § 403(d)(3), noting that the "plain language of the statute" was extremely broad, protecting "all sources of intelligence." 105 S.Ct. at 1888. It thus seems entirely inappropriate for this court to establish a limit on the protection afforded by the statute based upon the lapse of time. Besides being contrary to the breadth of the statutory language, it is difficult to conceive of how such a gradual limit would operate in practice. How many years must elapse before a source's identity becomes unprotectible? What interim stages of non-absolute protection would there be? Of what value would such partial protection be in the world of intelligence gathering? These questions are not answered by plaintiffs in their proposed "erosion" theory, and thus plaintiff's theory must be rejected.

B. *Exemption (b)(3): Information Specifically Exempt by Statute:*

FOIA permits agencies to withhold information specifically exempt from disclosure by statute. 5 U.S.C. § 552 (b)(3). The Court has previously held that the National Security Act, 50 U.S.C. § 403(d)(3) is indeed such a withholding statute within the meaning of FOIA. *Goland v. C.I.A.,* 607 F.2d 339, 349 (D.C.Cir.1979); *Weissman v. C.I.A.,* 565 F.2d 692, 694 (D.C.Cir.1977) (holding that § 403(d)(3) is "precisely the

type of statute[ ] comprehended by exemption (b)(3).").

■■ The CIA has claimed (b)(3) exemption almost coextensively with its (b)(1) exemptions, discussed above. The inquiry is thus whether release of the withheld information reasonably could be expected to lead to unauthorized disclosure of intelligence methods or sources, and if so, whether such disclosure reasonably could be expected to harm the national security. Again, the CIA bears the burden of showing that the withheld information fits within this exemption, *Abbotts v. Nuclear Regulatory Commission,* 766 F.2d 604, 606 (D.C.Cir.1985), and it may meet this burden by affidavits (or declarations). *Halperin v. C.I.A.,* 629 F.2d 144, 148 (D.C.Cir.1980). For the reasons discussed above, in the context of defendant's (b)(1) exemptions, the (b)(3) exemptions claimed appear to be equally proper under the standards set forth in *Hayden,* 608 F.2d 1381, and *Sims,* 105 S.Ct. 1881, and need no additional discussion here.

C. *Exemption 6: Unwarranted Invasion of Privacy:*

■ The CIA has withheld twelve letters and several miscellaneous documents pursuant to FOIA exemption (b)(6). That exemption permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In order to prevail as to its exemption (b)(6) claim, defendant must show that the documents come from the type of files that are statutorily protected, and must also show that, on balance, the public interest in disclosure does not outweigh the personal privacy interest of the individual who is the subject of the file. *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976).

As to the first prong of the exemption, defendant asserts, and plaintiff does not contest, that the documents withheld are from files within the definition of "similar files" that has been developed in the case

law under this exemption. That is, the information withheld is contained in government records and can be identified as applying to a particular individual. *Department of State v. Washington Post Company*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). This is all that is needed to satisfy the "similar files" language of exemption (b)(6).

The balance of public interest in disclosure and personal privacy interest must be performed *de novo* by this court upon any claim of exemption under FOIA (b)(6). *Lesar v. Department of Justice*, 636 F.2d 472, 486 (D.C.Cir.1980). However, explanations of the privacy interest at stake may be made in somewhat general terms by the agency, lest the privacy interest be lost in the process of justifying its protection. *Id.* at 488.

In this case, defendant has withheld twelve letters intercepted and copied by the CIA as part of its HTLINGUAL program, in existence between 1963 and 1973, in which the CIA covertly opened and copied mail sent or received by U.S. citizens in the Soviet Union. The Dube declaration asserts that while the individual who is the subject of the withheld letters was identified by the House Select Committee in its investigation of the Kennedy assassination, the letters themselves are unrelated to the investigation or the assassination. Declaration at ¶ 46. Thus there appears to be little or no public interest in their disclosure. However, as the court has held in an earlier opinion in this case, "mere association with the Kennedy assassination ... creates the type of unfavorable inference that impinges upon a substantial privacy interest." *Allen v. Dep't of Defense*, No. 81–2543, Memorandum Opinion at 7 (D.D.C. Aug. 24, 1984). Thus, the balance seems to tip in favor of nondisclosure.

Plaintiff asserts that in evaluating exemption (b)(6) claims, the balance is to be tilted in favor of disclosure, citing *Getman v. NLRB*, 450 F.2d 670, 674 (D.C.Cir.1971). Plaintiff contends that in attempting to justify these (b)(6) exemptions, defendant's supporting Declaration is merely conclusory, and fails to overcome the statute's expressed preference for disclosure.

Plaintiff's objections to defendant's (b)(6) claims must fail, however. First, each of the documents plaintiff refers to in his Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment is described in sufficient detail for this court to make its *de novo* determination. *See* Declaration at 122, 135, 136, 139. That defendant uses the statutory language of FOIA exemption (b)(6)—"disclosure ... would constitute a clearly unwarranted invasion of the personal privacy" of these individuals—*in addition* to a description of the withheld documents does not make defendant's description conclusory. Sufficient information is given as to Document 37, for example. It is a note containing "a brief biography of an individual named Jack Rubenstein," whose name is the same as that of Jack Ruby, but who is "in no way related to the Jack Ruby who killed Lee Harvey Oswald." Declaration at 122–3. There is little public interest in an individual who has no connection to the House Select Committee investigation save the coincidence of his name, but he does have a strong privacy interest in his biographical data. Exemption (b)(6) is thus applicable. Similar factual support is offered for the other documents that defendant seeks to withhold under (b)(6). And as the Court of Appeals for the District of Columbia Circuit noted in *Lesar v. Dep't of Justice*, in response to that plaintiff's complaint that defendant's support for (b)(7)(C) exemptions was too vague:

> "to initiate a further inquiry into the precise type of information contained in these records 'would in the nature of things destroy the privilege [accorded to individual privacy interests] for the inquiry cannot be made without revealing the withheld information.' ".

636 F.2d at 488, *quoting* the District Court Opinion, 455 F.Supp. 921, 925 (D.D.C.1978). Accordingly, plaintiff's objections to the (b)(6) exemptions must be rejected.

In addition, it should be noted that for each document for which defendant claims a (b)(6) exemption and to which plaintiff specifically objects in his Motion, exemptions (b)(1) and (b)(3) are also properly claimed, for the reasons discussed above in sections A and B of this memorandum.

### D. *Exemption (b)(7)(C) and (D): Law Enforcement Records:*

■ Defendants have withheld portions of three documents under FOIA exemption (b)(7)(C) and (D), which permits an agency to withhold "investigatory records compiled for law enforcement purposes" to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C) (amended by P.L. 99–570, signed into law on October 27, 1986), or a revelation of the identity of a "confidential source." 5 U.S.C. § 552(b)(7)(D).

As with exemption (b)(6), the (b)(7) exemptions require a two-pronged showing by the withholding agency: first, the agency must show that the file in question was compiled in the course of a law enforcement agency's investigation; and, second, the agency must show the type of harm from disclosure that the statute protects against. *See Pratt v. Webster*, 673 F.2d 408, 420–421 (D.C.Cir.1982). It should be noted that the amended language of exemption 7(C) creates a broader protection than had existed under the old language of the statute. Now, not only material that "constitutes an unwarranted invasion of personal privacy," but also material that "could reasonably" do so is within the exemption. *See* Defendant's Response to Plaintiff's Supplemental Memorandum at 2; P.L. 99–570 (1986).

Plaintiff points out, correctly, that to support an exemption under FOIA (b)(7), the defendant must supply affidavits from the investigating agency. *Pratt, supra,* 673 F.2d at 420. After oral argument, the CIA submitted affidavits from the Federal Bureau of Investigations or the U.S. Customs Service, the investigating agencies who have requested that the withheld information not be disclosed. Plaintiff has had an opportunity to respond to these affidavits.

The court finds that the supplemental affidavits submitted by defendant adequately support the claimed 7(C) and (D) exemptions. Given the newly amended statute, and the broader category of information that is protectible under 7(C), it is all the more clear that these exemptions are properly taken. Plaintiffs have shown little compelling interest in obtaining the withheld information save the general public interest in the Kennedy assassination. This does not outweigh defendant's showing that the information withheld does not relate to the Kennedy assassination, but does implicate the personal privacy interests of the individuals mentioned in the expurgated documents.

Again, the court rejects plaintiff's general claim of diminished need for withholding with the passage of time, in favor of a specific determination that, as to the particular information sought, the privacy interest outweighs the public interest in disclosure. Accordingly, summary judgment is proper as to defendant's 7(C) and (D) withholdings.

### IV. *The Remaining Documents: Extrapolation from the Sample*

■ The process of selecting 350 documents from among over 5,000 already processed by the CIA, and preparing a *Vaughn* index for those 350 documents, was meant to serve as a sample from which broader conclusions might properly be drawn. That is, the court's holdings as to the propriety of the CIA's claims of exemption for these 350 documents may be extrapolated to similar claims of exemption for documents subsequently processed and released or witheld by the CIA. Such a procedure has been approved by the Circuit Court of Appeals for the District of Columbia Circuit based upon a sample of only 1% of the total document request. *Meeropol v. Meese*, 790 F.2d 942, 958 (1986). In *Meeropol*, the court stated that:

Sampling procedures have been held to be 'appropriately employed where as here the number of documents is excessive and it would not realistically be possible to review each and every one.' 790 F.2d at 958, *quoting Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1490. Here, the number of documents is excessive, certainly enough so to justify the use of a sampling procedure and extrapolation therefrom. Accordingly, the parties are asked to formulate suggestions for proceeding with the processing of the remaining documents in plaintiff's request, in light of these cases and today's holding.

An appropriate Judgment and Order accompanies this Memorandum.

## JUDGMENT AND ORDER

This matter came before the court on cross motions for partial summary judgment, and on plaintiff's Motion for Appointment of a Special Master or Historical Review Committee. Upon consideration of the motions, the opposition thereto, oral argument, and the entire record herein, and for the reasons stated in the accompanying Memorandum, it is by the court this 26th day of November 1986.

ORDERED that plaintiff's Motion for Appointment of a Special Master or Historical Review Committee is denied; and it is further

ORDERED that plaintiff's Motion for Partial Summary Judgment is denied; and it is further

ORDERED that defendant Central Intelligence Agency's Motion for Partial Summary Judgment is granted; and it is further

ORDERED, ADJUDGED, and DECREED that partial summary judgment be and hereby is entered in favor of defendant Central Intelligence Agency as to all exemptions claimed under the Freedom of Information Act, 5 U.S.C. § 552, for those 350 documents selected by plaintiff as a sample of his Freedom of Information Act request; and it is further

ORDERED that the parties shall appear for a status conference on December 17, 1986 at 9:30 a.m.